582 P.2d 1293
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jesse CALLAWAY, Defendant-Appellant.**

**No. 11745.**

Supreme Court of New Mexico.

Aug. 29, 1978.

Freedman, Boyd & Daniels, Charles W. Daniels, David A. Freedman, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Don D. Montoya, Suzanne Tanner, Asst. Attys. Gen., Santa Fe, Peter McDevitt, Asst. Dist. Atty., Albuquerque, for plaintiff-appellee.

## OPINION

McMANUS, Chief Justice.

Defendant was charged with alternative counts of first and second-degree murder for the shooting death of his former wife. The primary issue at trial was whether the evidence presented as to the state of mind of the defendant warranted an instruction to the jury on the lesser-included offense of voluntary manslaughter.

After trial by jury the defendant was convicted of first-degree murder and sentenced to life imprisonment. Defendant appeals.

Defendant has raised three points on appeal. Due to the result we reach on the first issue, we need not address the remaining issues.

Defendant argues that the prosecutor's repeated prejudicial comments denied him a fair trial. The conduct of the prosecutor alleged to be reversible error was his questioning the defendant as to his refusal to make a formal statement to the police and as to whether the defendant requested counsel after arrest. We agree.

During cross-examination of the defendant the following exchange occurred:

"Q. [By prosecutor.] Did you refuse to make a formal statement to the police?

"[By defense counsel.] Your Honor, I am going to object to that as a comment on a person's right to remain silent once they are placed under arrest—Fifth Amendment right to the Constitution.

"[THE COURT.] Overruled. He has taken the stand.

"Q. [By the prosecutor.] Did you refuse to make a formal written statement to the police officers?

"[By defense counsel.] Your Honor may we approach the bench?

"[THE COURT.] Sure.

"(Whereupon, counsel approached the bench and a discussion was held outside of the hearing of the jury.)

"[THE COURT.] Ladies and gentlemen of the jury the last question asked by the—by Mr. McDevitt, 'Did you refuse to make a formal statement?' which was objected to by counsel for the defense, the objection has been sustained by the Court and you are to disregard that last question and you are not supposed to guess or speculate and ordered not to and charged not to speculate as to the answer to any such question as that or and as to that question. Do you understand ladies and gentlemen? You may proceed Mr. McDevitt.

Shortly thereafter, the prosecutor asked:

"Q. Did you request an attorney?

"A. [By Callaway.] No.

"Q. You did not request an attorney?

"[By defense counsel.] Your Honor, may we approach the bench again?

"(Whereupon, counsel approached the bench and a discussion was held outside of the hearing of the jury.)

"Q. [By the prosecutor.] Mr. Callaway, do you know David Freedman?

"A. [By Callaway.] Yes.

"[By defense counsel.] Your Honor I would ask the Court to instruct Mr. McDevitt—

"[THE COURT.] Just a moment. Remove the jury for a moment please—Now, what do you want to say Ms. Steinmetz?

"[By defense counsel.] Your Honor, I would just ask the Court to instruct Mr. McDevitt to stop asking questions that go to this defendant's Fifth Amendment right to remain silent and go to the fact that when he exercised his *Miranda* rights which he is entitled to do, that none of that can be brought up before the jury and—I am tired of insinuations—Someone has the right to remain silent. They have a right to request an attorney. They have a right not to make a statement and to keep insinuating to the jury that he had something to hide or that he should have made a statement at the time is in violation of those rights and I would ask the Court to instruct Mr. McDevitt to stay away from that area.

"[THE COURT.] The Court has already instructed Mr. McDevitt and the prosecutor to go to some other subject and I am stating that again. The objections to his prior questions were made on this record and I have ruled on them and now let's go to something else. Is that understood Mr. McDevitt?

"[By defense counsel.] Your Honor, when the Court admonishes Mr. McDevitt to go on to something else the prosecutor does not go on to something else and that is the problem in this particular matter. We have stated our objection and—

"[THE COURT.] Now, in open court and outside of the hearing of the jury, I am instructing Mr. McDevitt to go on to something else in his cross-examination. Do you understand?

"[By the prosecutor.] Your Honor, I request a recess so that we can prepare legal arguments on this point.

"[THE COURT.] No, denied. I have ruled on the legal arguments and on the objections and I am instructing you as the Court, Mr. McDevitt, to proceed to other matters and not to return to this matter about the Fifth Amendment rights or any formal statements made by this individual. He made statements informally that have all come into evidence and that is sufficient and those statements made by him have been admitted by this Court and the instructions of the Court to you is to get off of this point now and go to another area of cross-examination. Do you understand that, sir?

"[By the prosecutor.] Yes, sir, I do.

"[THE COURT.] All right.

"[By the prosecutor.] To which I except.

"[THE COURT.] Your exception is noted. The instruction to you still stands. Bring in the jury."

During the first bench conference the objection of the defense counsel was sustained. At the second bench conference, which for the most part is unintelligible on the taped transcript, the trial court directed the prosecutor to "go on to something else." Despite the direction of the trial court the next question asked by the prosecutor was, "Mr. Callaway, do you know David Freedman?" Mr. Freedman was one of the attorneys representing the defendant.

■ The line of questioning was designed to elicit testimony concerning the defendant's post-arrest silence and his request for counsel. The use of evidence of post-arrest silence for the purpose of raising an inference of guilt is clearly erroneous. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) the United States Supreme Court held that the use for impeachment purposes of a defendant's silence, at the time of arrest, and after receiving *Miranda* warnings violated the Due Process Clause of the fourteenth amend-

ment. *Id.* at 619, 96 S.Ct. 2240. In *Doyle* the state did not claim that the use of the statement was harmless error.

In this cause, the State in its answer brief, concedes that the questioning may constitute error, but argues that such error is harmless and does not provide grounds for reversal. The State is correct that many lower courts have found that the harmless error doctrine is applicable to the kind of constitutional violation outlined in *Doyle.* See, *Stone v. Estelle,* 556 F.2d 1242 (5th Cir. 1977); *Chapman v. United States,* 547 F.2d 1240 (5th Cir. 1977), *cert. denied* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). However, reference to a defendant's silence and/or request for counsel, both in testimony and in closing argument, has been held to constitute reversible error. See, *United States v. Arnold,* 425 F.2d 204 (10th Cir. 1970); *United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969), *cert. denied,* 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969).

In *State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976) this Court held that unsolicited and possibly inadvertent testimony regarding both post-arrest silence and a request for an attorney would not constitute reversible error. In *Baca* this Court limited the holding in *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975) to those comments on a defendant's exercise of constitutional rights directly attributable to the prosecutor as opposed to inadvertent testimony of a witness. The *Doyle* decision, which was rendered since *Baca,* does not affect this result since harmless error may be found. *Stone, supra.*

In *Lara* the Court of Appeals had held that if the reference to a defendant's silence lacks significant probative value, it has an intolerable prejudicial impact. In more recent New Mexico cases, it has been held that the question on review as to a comment regarding a request for counsel is whether the probative value of the evidence was outweighed by its prejudicial effect. See, *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.1978); *State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (Ct.App.1977); *State v.*

*McGill,* 89 N.M. 631, 556 P.2d 39 (Ct.App. 1976).

There are also other decisions which distinguish *Lara* on its facts and hold that a comment on a defendant's silence under the circumstances is not prejudicial since the defendant chose not to remain silent. *State v. Hamilton,* 89 N.M. 746, 557 P.2d 1095 (1976) (defendant declined to talk to one particular detective); *State v. Olguin,* 88 N.M. 511, 542 P.2d 1201 (Ct.App.1975) (defendant chose to make an exculpatory statement).

■ The State, during oral argument, contended that the questions of the prosecutor were designed to elicit testimony properly admissible under *Day* and *Olguin, supra.* To present a point for our consideration, a party must submit written argument, transcript references and authorities thereon. *See, State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). In its brief the State conceded error but relies upon the harmless error rule to sustain the conviction. This is the issue before us.

It is true, as the State argues, that a curative instruction was given that may have initially mitigated the error and that the prosecutor did not refer to the defendant's silence and request for counsel in closing argument. *United States v. Wycoff,* 545 F.2d 679 (9th Cir. 1976), *cert. denied* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977); *Arnold, supra ; Nolan, supra.* Nor did the questions focus on the defendant's silence so as to attack the defendant's innocence or exculpatory story. *Stone, supra.* The State further argues that the questions constituted only a brief portion of the context of the whole trial and that these factors, in addition to the amount of evidence, compel a finding of harmless error. We disagree.

■ The questioning compelled a considerable interruption in the trial. The prosecutor, despite the admonition of the trial court, insisted on following a line of questions that violated the defendant's constitutional rights. His initial questions were directed specifically to the defendant's right to remain silent and the following questions specifically related to the defendant's right to counsel. This line of questioning was unwarranted and prejudicial. *Miranda, supra.* We cannot approve of such prosecutorial tactics. This action compelled the court to conduct two bench conferences and to remove the jury, drawing considerable attention to the entire line of questioning. This constitutes more than harmless error.

The questions were deliberate and fall within the prohibitions outlined in *Miranda* and *Baca.* Although the State presented considerable evidence in rebuttal of the claim of provocation, we cannot say that this evidence was so overwhelming as to find that the questioning of the prosecutor constituted harmless error or that there is no reasonable possibility that the improper questioning contributed to the conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We find the actions of the prosecutor constituted reversible error.

■ We find no merit in the defendant's claim of double-jeopardy which would bar a new trial. This cause is reversed with instructions to grant the defendant a new trial.

IT IS SO ORDERED.

SOSA and PAYNE, JJ., concur.