617 P.2d 142

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Michael Marvin DAY,
Defendant-Appellant.**

No. 12500.

Supreme Court of New Mexico.

March 14, 1980.

Rehearing Denied April 2, 1980.

Certiorari to United States Supreme Court
Denied Oct. 6, 1980.
See 101 S.Ct. 163

Charles E. Driscoll, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Janice Marie Ahern, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FELTER, Justice.

Defendant, Day, was convicted of aggravated burglary and criminal sexual penetration in the second degree. Because of the inability of the Court of Appeals panel to decide the case, it was certified to this Court for decision on appeal. We affirm the judgment and sentence of the trial court.

Appeals from prior trials upon the same charges are *Day I*, 90 N.M. 154, 560 P.2d 945 (Ct.App.1977), and *Day II*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). In *Day I* the

conviction was reversed because of confusing instructions regarding insanity as a defense and presumptions surrounding that defense, which confusion deprived the defendant of a fair trial. In *Day II* the conviction was reversed and a new trial was ordered because of prejudicial prosecutorial misconduct.

Since that alleged misconduct is a part of the basis for this appeal, it is set out here in this opinion. As properly allowed by N.M. R.Evid. 609(a) and (b), N.M.S.A.1978, on cross examination of the defendant, the prosecutor brought out that the defendant was convicted of robbery in California in 1965 (defendant was not released from the confinement imposed therefor until less than ten years before the admission of the fact in evidence). Immediately after establishing the robbery conviction, the prosecutor asked defendant, "So the fact that you weren't carrying a real gun—if you had been carrying a real gun—it would have constituted a federal offense, wouldn't it?" Day responded that he didn't know. An objection to that question was then sustained.

The prosecutor then asked the defendant —"Now—let's see, you were convicted in 1964—." Before the question was completed, an objection and a motion for mistrial were made. The objection was sustained and the jury was admonished to disregard the 1964 conviction. The motion for a mistrial was denied. (Before Rule 609 was amended, effective April 1, 1976, the question concerning the 1964 conviction of Day would have been admissible, but not after.) During rebuttal argument the prosecutor told the jury that he had been accused of withholding evidence, but that counsel for defendant objected to the question about the 1964 conviction and thus succeeded in withholding evidence from the jury.

Several issues were listed in the docketing statement, but not briefed. Those issues are deemed to be abandoned. *State v. Brown*, 93 N.M. 236, 599 P.2d 389 (Ct.App.1979), *writ quashed*, 93 N.M. 172, 598 P.2d 215 (1979); *State v. Gallegos*, 92 N.M. 370, 588 P.2d 1045 (Ct.App.1978), *cert.*

*denied*, 92 N.M. 353, 588 P.2d 554 (1978). Four issues remain for decision on appeal. They were correctly identified by Chief Judge Wood in his proposed opinion affirming the conviction. While Judge Wood's opinion failed to win concurrence from other members of the Court of Appeals panel, we agree with his opinion and adopt it with modifications. The remaining issues are dealt with as stated below.

I. Whether the double jeopardy clause of the Fifth Amendment to the United States Constitution, and Article II, Section 15 of the New Mexico Constitution prevented the retrial of defendant by reason of the prosecutorial misconduct, from which there resulted a reversal in *Day II*?

II. Whether defendant was properly restricted in his cross examination of the victim when the court sustained the prosecutor's objections to six of defendant's questions?

III. Whether admission of testimony of a verbal exchange between an officer and defendant as a part of the State's case-in-chief was error?

IV. Whether permitting defendant to be cross examined concerning his 1965 California robbery conviction was error, inasmuch as robbery with a toy pistol in California may have been a misdemeanor (Calif.Penal Code § 211 (West 1970))?

I.

It may be argued that the prosecutor acted in good faith when he attempted to question the defendant about the 1964 conviction. (The question would have been admissible under Rule 609 before that rule was amended effective April 1, 1976.) In any event, nothing in the record indicates that the prosecutor asked the question in bad faith or in any posture other than a possible lack of familiarity with the amended rule. Moreover, the admonition by the Court at the time effectively eliminated the incompleted question as prejudicial error.

But the Court of Appeals concluded that the prosecutor's rebuttal comment to the jury concerning the 1964 conviction was prejudicial and purposeful misconduct, as was his hypothetical question about the 1965 federal gem offense, had the gun been real. *Day II*, 91 N.M. at 572–3, 577 P.2d at 880–81. We agree with that conclusion. The question before us is whether such "purposeful" misconduct created a double jeopardy bar to the retrial of the defendant.

The owner of the cause of action against the defendant is the State of New Mexico, composed of all of its citizens, and not the prosecutor who was guilty of the "purposeful" misconduct. Philosophically, to dismiss the case because of such misconduct, would appear to assess a penalty against the innocent citizens of the State and to let go without sanction the actual wrongdoer who alone engaged in the misconduct. Since the body of judicial interpretation relating to double jeopardy in the context in which it arises in this case is without adequate clarity, a philosophical consideration of that constitutional provision, as well as discussion in some detail of the applicable case law, is appropriate.

◼ Important constitutional questions present themselves in this case. The double jeopardy clause in Article II, Section 15 of the New Mexico Constitution is subject to the same construction and interpretation as its counterpart in the Fifth Amendment to the United States Constitution. *State v. Rogers*, 90 N.M. 604, 566 P.2d 1142 (1971). Accordingly, the defendant relies heavily upon *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977) and *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In *Lee*, it was held that omission in the criminal information of essential allegations of "knowingly" and "intentionally" depriving the victim of his property in a theft case, followed by dismissal for failure to provide adequate notice of the crime charged, did not create a double jeopardy bar to retrial even though the court had heard the evidence before dismissal. In discussing the double jeopardy claim in *Lee* the United States Supreme

Court nevertheless referred to *Dinitz* as follows:

It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial *unless* the judicial or *prosecutorial error that prompted petitioner's motion* was "intended to provoke" the motion or was otherwise "motivated by bad faith or undertaken to harass or prejudice" petitioner. (Emphasis added.)

432 U.S. at 33–4, 97 S.Ct. at 2147.

◼ Neither the prosecutor's drafting error nor the trial court's denial of the motion to dismiss made after the attachment of jeopardy constituted the type of error proscribed in *Dinitz* which would create a double jeopardy bar to retrial.

In *Dinitz*, after jeopardy had attached, but well before verdict, the trial judge had excluded one of the defendant's lawyers from the courtroom for repeatedly disregarding his instructions. Defendant's remaining lawyer then moved for a mistrial and the motion was granted. Defendant was indicted again upon the same charge and convicted. His claim of double jeopardy was rejected by the trial court. After reversal by the Fifth Circuit Court of Appeals, the Supreme Court reversed that ruling, holding that the Fifth Circuit erred in finding that the retrial violated the respondent's constitutional right not to be twice put in jeopardy. The Supreme Court found that the banishment of one of defendant's lawyers from the proceedings was not done in bad faith in order to goad the respondent into requesting a mistrial or to prejudice his prospects for an acquittal, and stated in part the following:

The Double Jeopardy Clause does protect a defendant against governmental actions *intended* to provoke mistrial requests *and* thereby to *subject defendants* to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor", *United States v. Jorn, supra*, [400 U.S. 470] at 485, 91 S.Ct. 547, 27 L.Ed.2d 543, threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford

the prosecutions a more favorable opportunity to convict," * * * (Emphasis added.)

*Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081.

Neither *Lee* nor *Dinitz* involved a factual situation creating a double jeopardy bar to a retrial. In both cases a retrial was proper. Each case, however, gives voice to a proposition that double jeopardy attaches where the prosecutor, rather than risking an acquittal, purposely creates a situation necessitating a mistrial (or a reversal) in order to create a more favorable climate for conviction upon retrial. The remaining language in both *Lee* and *Dinitz* relating to general harassment and double jeopardy appears somewhat nebulous, unless it may be said that it is intended only to reiterate the rule already stated respecting precipitation of mistrial/retrial. Otherwise, any intentional prosecutorial act that adds up to any misconduct or error could be argued, in a sense, to be intended to prejudice the defendant's case. This would result in a chilling effect on the prosecution. A litigant does not win his case by exalting his adversary's case.

Other cases which follow the double jeopardy rule in a manner that is substantially consistent with this opinion and with greater lucidity than *Lee* or *Dinitz* are: *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *United States v. Weaver*, 565 F.2d 129 (8th Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780; *United States v. Buzzard*, 540 F.2d 1383 (10th Cir. 1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790; *Loveless v. State*, 39 Md.App. 563, 387 A.2d 311 (1978), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1992, 60 L.Ed.2d 373; *Thompson v. State*, 38 Md.App. 499, 381 A.2d 704 (1978).

No clearly defined rule on this issue before us has been announced and applied in this state. In *State v. Callaway*, 92 N.M. 80, 582 P.2d 1293 (1978), questioning of the defendant by the prosecutor as to his refusal to make a formal statement to police, and as to whether defendant had requested counsel after his arrest, was held to be prejudicial error. But this Court rejected a claim of double jeopardy in that case as being without merit but did not state a rule of law in support of its conclusion.

Nothing in the record of this case suggests that the prosecutor engaged in any misconduct for the purpose of precipitating a motion for a mistrial, gaining a better chance for conviction upon retrial, or subjecting the defendant to the harassment and inconvenience of successive trials. Absent such conduct, no double jeopardy attaches. No mistrial was granted and the trial proceeded to a conviction. The statement of the prosecutor in his rebuttal argument, though purposeful, improper and prejudicial, was in response to suggestions by defense counsel that evidence had been withheld. Neither that statement nor any other conduct by the prosecutor may be presumed to wear any jacket other than that of the prosecutor's misguided effort to win his case. The statement does not appear to be the result of a plan or a scheme to bring about a mistrial. It was in reaction or overreaction to statements by counsel for defendant. While such conduct on the part of the prosecutor cannot be condoned, it cannot, on the other hand, be suffered to deprive the citizens of this State of their case against the defendant. The severe prejudice that resulted unto the defendant was rectified by the new trial which was free of such prejudice. While undoubtedly it was troublesome and perplexing for the defendant to undergo another trial, the number of trials involving the same defendant upon the same charges does not, per se, set up a double jeopardy bar. In *Beecher v. Baxley*, 549 F.2d 974 (5th Cir. 1977), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124, it was held that a fourth trial over a twelve-year period did not violate due process rights or otherwise impede a fair trial. If the type of misconduct with which we are here concerned occurs in other cases, it may be punished more equitably and more completely eliminated by enforcing strict attorney discipline in court rather than penalizing the offend-

ing attorney's innocent client. Applying the tests set forth in this opinion to the facts of the case, we hold that defendant's claim of double jeopardy is without merit.

## II.

During an extensive cross examination of the victim, the prosecutor made numerous objections to defendant's questions. A large number of the objections were sustained. At the close of the victim's testimony, defendant moved for a mistrial, asserting that he was effectively prevented from presenting a defense by the trial court's action in sustaining the prosecution's objections. The motion was denied. The denial of this mistrial motion is not an issue on appeal. We have referred to the mistrial motion only because it points up the defendant's failure to invoke a ruling of the trial court on the issue argued on appeal.

During her direct examination, the victim testified that defendant seemed to be quite rational, explaining that defendant never raised his voice, never seemed to get excited except when the victim yelled, and pursued his objective by continuing to try to tie up the victim.

■ On cross examination, defendant asked several questions directed to whether defendant's behavior was rational. Lay testimony is admissible in connection with an insanity defense. *State v. Lujan*, 87 N.M. 400, 534 P.2d 1112 (1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 400 (1975). Defendant now contends that by sustaining six of the prosecutor's objections to specific questions, the trial court limited his right of cross examination, thereby impairing his right to confront the witnesses against him, and his right to present a defense.

■ This appellate claim was not raised by the motion for a mistrial. The motion for a mistrial embodied a general claim about the trial court sustaining the objections of the prosecutor during an extensive cross examination. Use of the motion for a mistrial is not appropriately addressed to mere erroneous rulings of law,

but generally is used to specify such fundamental error in a trial as to vitiate the result. See N.M.R.Crim.P. 51, N.M.S.A. 1978. Neither during the trial nor in the motion for a new trial did defendant assert that his cross examination of the victim was improperly restricted. Defendant's claim of improper restriction of the cross examination of the victim, not having been raised in the trial court, is not properly before us for review. *State v. Apodaca*, 81 N.M. 580, 469 P.2d 729 (Ct.App.1970).

■ While cross examination of the victim concerning her opinion that defendant seemed quite rational should not be unduly restricted, three of the six questions selected by defendant as the basis for his argument asked the victim to state whether certain actions of the defendant were the actions of an "average, rational rapist", or the "behavior of a rational rapist". Clearly, absent a showing that the victim had any knowledge of or expertise concerning the actions of a "rational rapist", the questions were beyond the competence of the victim to answer and were without adequate foundation. The trial court properly sustained the objections of the prosecutor. *See Pavlos v. Albuquerque National Bank*, 82 N.M. 759, 487 P.2d 187 (Ct.App.1971).

■ The six questions which the defendant directed to the victim asked her to state whether certain specific acts were rational. All of the questions were asked in the context of actions taken during the commission of the crimes of which defendant has been convicted. All went beyond the victim's explanation, during direct examination, as to why defendant "seemed rational." Absent something indicating knowledge by the victim of what would be rational conduct of a person committing the crimes involved, there is nothing indicating the victim had a knowledgeable basis for answering these questions under N.M.R.Evid. 701, N.M.S.A. 1978.

■ The exclusion of opinion evidence is a decision within the broad discretion of the trial court. *City of Santa Fe v. Gonzales*, 80 N.M. 401, 456 P.2d 875 (1969). The trial

court's ruling will be set aside only on a showing that discretion was abused. *See State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979); *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978). The record does not show an abuse of discretion in sustaining objections to the six specific questions.

### III.

At trial, testimony of an exchange between an officer and defendant was admitted during the State's presentation of its case-in-chief. The testimony is substantially similar to the testimony set out in *Day II* under the heading "References to Defendant Exercising His Right to Counsel". However, in *Day II,* the testimony was rebuttal testimony. Defendant contends the admission of the testimony in the case-in-chief was error. Assuming the testimony should not have been admitted during the case-in-chief, defendant was not prejudiced and no reversible error occurred. *See State v. Alderette,* 86 N.M. 600, 526 P.2d 194 (Ct.App.1974), *cert. denied,* 86 N.M. 593, 526 P.2d 187 (1974).

After being orally advised of his constitutional rights, but after declining to sign a written waiver, defendant remarked that this was all hogwash. This was a volunteered comment and was properly admitted. *State v. Greene,* 91 N.M. 207, 572 P.2d 935 (1977).

The officer asked what defendant meant by hogwash. Defendant stated that he was looking for his dog when he entered the apartment, that when he entered "all hell broke loose", and that he "better not do or say anything until my attorney arrives". The officer asked no more questions; defendant was returned to jail.

Although the officer stated during voir dire, and out of the presence of the jury, that defendant did not indicate that he wanted to waive his rights, this does not mean that he did not waive his right to silence. He had been orally advised of his rights and was aware of them because defendant indicated he did not wish to sign a written waiver. The defendant then made his "hogwash" remark. The officer did not

know what defendant meant and thought the hogwash remark referred to the advice of rights. Asked his meaning of hogwash, defendant then made his remarks concerning the dog, his entry, and his desire to wait for his attorney. The circumstances of defendant's answer could properly be held to be a waiver. *See Day II, supra.*

In addition, defendant's answer was not responsive to the officer's question as to the meaning of hogwash. Defendant's answer was not the result of in-custody questioning. As a volunteered statement, defendant's answer was admissible. *State v. Greene,* 91 N.M. 207, 572 P.2d 935 (1977).

That part of a defendant's answer that referred to his lawyer was not a denial of his right to counsel. *Day II, supra.* There was no interrogation of the defendant after he indicated he wanted his lawyer present.

### IV.

Cross examination of defendant concerning his prior robbery conviction was proper whether the particular conviction was for a misdemeanor or a felony. Robbery involves dishonesty. *Day II, supra. See also State v. Melendrez,* 91 N.M. 259, 572 P.2d 1267 (Ct.App.1977). The cross examination concerning the robbery conviction was permissible under Rule 609. In permitting the cross examination, the trial court exercised its discretion. *Day II, supra.* The trial court did not abuse its discretion in permitting the cross examination.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

EASLEY, PAYNE and FEDERICI, JJ., concur.

SOSA, C. J., dissenting.

SOSA, Chief Justice (dissenting).

The general rule is that a person may be retried after a mistrial is granted at his request. But where the mistrial was caused by bad faith on the part of the prosecutor,

there is a double jeopardy bar against retrial. In *Day II* the Court of Appeals held that the prosecutor's conduct was "purposeful * * * and could not be rectified by admonitions from the trial court."

I read *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), as barring reprosecution if the underlying error was " '*motivated by bad faith* or undertaken to harass or prejudice.' " *Id* at 33, 97 S.Ct. at 2147.

Prosecutorial over-reaching has been held to be a bar to a second trial. *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976).

I view the prosecutorial misconduct here as both over-reaching and motivated by bad faith, and would therefore reverse.

For the foregoing reasons I respectfully dissent.