632 P.2d 359

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Frank SANTILLANES,
Defendant-Appellee.**

No. 4528.

Court of Appeals of New Mexico.

March 25, 1980.

Opinion on Certification Dec. 16, 1980.

low, Chief Public Defender, Lynn Corr, Asst. Appellate Defender, (Opinion on Certification) Santa Fe, for defendant-appellee.

## MEMORANDUM

HENDLEY, Judge.

The State appeals from an order of the district court striking the enhancement clause from the indictment and "the enhancement proceeding is dismissed with prejudice." We proposed summary affirmance of the Court's order on the basis that the notice required under the Controlled Substances Act for enhancement had not been provided to the defendant. § 30–31–20(B), N.M.S.A. 1978; *State v. Rhodes*, 76 N.M. 177, 413 P.2d 214 (1966); *State v. Garduno*, 93 N.M. 335, 600 P.2d 281 (1979). Except for the assertion of State's counsel that oral notice was given the defendant, there is no indication in the record that notice was given by "some pleading filed by the State, whether by motion or otherwise" that enhancement would be sought. On its face, the indictment provides no such notice. Compare *State v. Garduno*, supra.

It is our conclusion, therefore, that the trial court, in effect, was striking the State's oral assertion that it would seek enhancement *in that proceeding*. Due to the lack of notice discussed above, the trial court was correct in so ruling.

*State v. Rhodes*, supra recognized that a comparison and application of the procedure mandated by the Habitual Criminal Act to the Narcotic Drug Act is unjustified due to the specific legislative directives provided in the former act and which direction is lacking in the latter act. See § 31–18–7, N.M.S.A. 1978 (repealed July 1, 1979); § 31–18–20, N.M.S.A. 1978 (Supp.1979); *State v. Soliz*, 79 N.M. 263, 442 P.2d 575 (1968); *Lott v. Lox*, 76 N.M. 76, 412 P.2d 249 (1965). Nonetheless, *Rhodes* held that notice and opportunity to be heard before an increased penalty could be imposed were required as a matter of fundamental fairness—due process. *Rhodes* thus states the minimum requirement. By legislative enactment, additional requirements are mandated by the Habitual Criminal Act. *Rhodes* does not

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Asst. Atty. Gen., Santa Fe, Art Encinias, Asst. Atty. Gen. (Opinion on Certification) Santa Fe, for plaintiff-appellant.

John L. Walker, William D. Teel, Teel & Walker, P. A., Albuquerque, John B. Bige-

preclude the State from following such additional procedures when prosecuting a "second" drug offense. See *State v. Chavez*, 79 N.M. 741, 449 P.2d 343 (Ct.App. 1968).

Therefore, we hold that the State may file a supplemental information charging a second violation of the Controlled Substances Act against a defendant, subsequent to the defendant's conviction on the second. Therefore, only that aspect of the trial court's order striking the enhancement provision "with prejudice" is reversed.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.

## OPINION ON CERTIFICATION

WALTERS, Judge.

Two questions in this matter are certified to us by the Supreme Court which granted certiorari to defendant when we denied his motion for rehearing. Those questions are:

1. Whether the state had the right to appeal the decision of a trial court's striking any enhancement of sentence with prejudice after the trial court had sentenced the petitioner for the current charges in the indictment;

2. Whether the Court of Appeals erred in holding that the double jeopardy clause of the New Mexico Constitution and the United States Constitution did not preclude the state from filing a supplemental information charging a second violation of the Controlled Substances Act after petitioner had already been sentenced by the trial court for the original charges contained in the indictment.

This certification arose from our memorandum opinion of March 25, 1980, affirming the trial court's striking of the enhancement clause from the indictment. We reversed that portion of the court's order which struck the clause "with prejudice" and held that the State could file a supplemental information charging a second violation of the Controlled Substances Act, under which enhancement could be sought.

We respond to the two questions certified, in order.

I.

Article VI, § 2 of the New Mexico Constitution, before amendment in 1965 read:

The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all final judgments and decisions of the district courts, and said court shall have such appellate jurisdiction of interlocutory orders and decisions of the district courts as may be conferred by law.

The section was wholly amended in 1965, and since then has read:

Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the Supreme Court. In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as may be provided by law; provided that an aggrieved party shall have an absolute right to one appeal.

Defendant argues that the State is limited to the type of criminal appeals specifically set out in § 39–3–3 B, N.M.S.A.1978, which provides:

B. By the state. In any criminal proceeding in district court an appeal may be taken by the state to the supreme court or court of appeals, as appellate jurisdiction may be vested by law in these courts.

(1) within thirty days from a decision, judgment or order dismissing a complaint, indictment or information as to any one or more counts;

(2) within ten days from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property, if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

It is true that forerunners of the present statute provided that the state should "only" be allowed an appeal for alleged errors similar to those in the current stat-

ute. *See* §§ 4517, 4519, 1915 Code (1907 N.M.Laws, ch. 57, § 48); § 42–1503, N.M.S.A.1941; § 41–15–3, N.M.S.A.1953, repealed by 1966 N.M.Laws, ch. 28, § 65. In 1966 the legislature enacted § 21–10–2.1 B, N.M.S.A. 1953 (1966 N.M.Laws, ch. 28, § 36), which restated the several instances in which the State could appeal a criminal matter, but omitted the word "only" in the new act. In 1972, the section was again repealed, and a new § 21–10–2.1 B, N.M.S.A.1953, which is now § 39–3–3 in the 1978 compilation, was enacted under 1972 N.M.Laws ch. 71, § 2. Again the word "only" was left out. Thus, cases decided before 1965 when the constitution was amended, or 1966 when the statute omitted "only," are not pertinent to the question of the State's right to appeal criminal matters in 1980.

In 1969 the Supreme Court held that the State had no right to seek review, by certiorari, of the Court of Appeals' reversal of a criminal conviction. It reasoned that an appeal by the State to the Supreme Court, after a criminal trial, was not included in the provisions of § 21–10–2.1, *supra,* and that the State "should not be permitted to accomplish by certiorari what it cannot do by appeal." *State v. Paul,* 80 N.M. 746, 747, 461 P.2d 228 (1969). That result accorded with earlier New Mexico precedent, decided under the earlier statutes and constitutional provision we have referred to. *See State v. Ashcraft,* 32 N.M. 209, 252 P. 1001 (1927); *State v. Dallas,* 22 N.M. 392, 163 P. 252 (1917); *Ex parte Carrillo,* 22 N.M. 149, 158 P. 800 (1916); *State v. Chacon,* 19 N.M. 456, 145 P. 125 (1914).

However, in 1973 *State v. Paul, supra,* was overruled to the extent that it prohibited the State from seeking, and the court from granting, a writ of certiorari to review the Court of Appeals' decision in a criminal case, if other certiorari requirements of § 34–5–14, N.M.S.A.1978 (then § 16–7–14, N.M.S.A.1953), were met. *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973). *Gunzelman* further held that the Supreme Court's "original jurisdiction to issue writs of certiorari, as provided for in art. VI, § 3 . . . leaves no doubt as to the power of the Court to issue such writs." (85 N.M. at 299, 512 P.2d 55)

Certain language of *Gunzelman, supra,* seems to imply that the State's right to appeal a criminal matter in the first instance is restricted to those circumstances provided in § 39–3–3, *supra:*

". . . [T]here is no reason to assume that the legislature, *in limiting the State's right to appeal in a criminal case,* intended a like limitation in the granting of a writ of certiorari." (Emphasis added.) (85 N.M. at 298, 512 P.2d 55)

We note, however, that the question in *Gunzelman* was not concerned with whether the State's right to bring an appeal in a criminal matter was restricted, but whether the State could request and obtain certiorari from a decision of the Court of Appeals in a criminal appeal. Thus, the emphasized language may have been inadvertent. We note further that the constitutional provision of art. VI, § 2, was referred to only in the context of the Supreme Court's appellate jurisdiction "as may be provided by law"; the last sentence of the section granting to an aggrieved party an "absolute" right to one appeal was not discussed. Nor was there any reason to discuss it within the compass of the matter decided in *Gunzelman.* But we are now squarely faced with this issue by the first question certified to us by the Supreme Court.

We have just recently decided, in *State v. Doe and Doe,* 95 N.M. 90, 619 P.2d 194 (1980), that "[t]he state is aggrieved by a disposition contrary to law and may properly challenge such a disposition on appeal." A disposition contrary to law is exactly what the State has alleged in this appeal from the trial court's order striking the enhancement clause in the indictment, and dismissing, with prejudice, the enhancement proceeding against defendant.

In *Doe and Doe, supra,* we relied on the portion of § 32–1–39(A) of the Children's Code, N.M.S.A.1978, which provides that "[a]ny party may appeal from a judgment of the court to the court of appeals in the manner provided by law," settling in that case only the question whether the State or

the Corrections Department was the proper party on appeal of a children's court delinquency proceeding.

■■■■ We think the instant matter is governed wholly by the constitutional amendment of 1965 granting an "absolute right to one appeal" to any aggrieved party. Article VI, § 2, N.M.Const. The State is without question a party to every criminal proceeding in the district courts; a claim of disposition contrary to law is a valid and legal grievance which indisputably makes the State "an aggrieved party." In our view, § 39–3–3 merely recognizes the State's constitutional right to appeal, and identifies circumstances permitting ordinary and interlocutory appeals, and affirms the constitutional prohibition against appeals that would violate double jeopardy principles. The legislature, by statute, may not diminish a right expressly provided by the constitution; "no branch of government may add to, nor detract from" the constitution's clear mandate. *State v. Mechem*, 63 N.M. 250, 316 P.2d 1069 (1957).

■■■■ We hold, therefore, that the State had the constitutional right to appeal the order of the trial court which struck the enhancement portion of the indictment and dismissed the enhancement proceeding, with prejudice.

## II.

The second question certified to us requires a reversal of our earlier disposition of this case.

Defendant was indicted on three counts of trafficking in heroin. The indictment itself contained nothing to indicate that defendant was or would be subject to enhancement of sentence as a multiple offender under § 30–31–20(B), N.M.S.A.1978.

The State and the defendant take opposing positions on the procedure by which the State may charge a prior drug conviction in order to permit imposition of an enhanced sentence. The State contends it may be done as suggested in our memorandum opinion of March 25, 1980, by filing "a supplemental information charging a second violation ... subsequent to defendant's conviction," because this is the manner in which the habitual offender enhancement is handled. *See* §§ 31–18–18, –19, –20, N.M.S.A.1978.

On the other hand, defendant urges that *State v. Allen*, 82 N.M. 373, 482 P.2d 237 (1971), prohibits increasing a sentence after defendant begins to serve it, contending that to do so would violate the constitutional double jeopardy provision.

Section 30–31–20 B(2) of the Controlled Substances Act in effect at the date of the crimes charged against defendant specified that one who violates the trafficking statute more than once shall be sentenced to life imprisonment. The amendment to that section (1980 Supp. to N.M.S.A.1978) provides that the sentence to be imposed upon a second or subsequent narcotics offender shall be the same as the sentence set out in the basic sentence section, § 31–18–15 of the Criminal Sentencing Act, §§ 31–18–12 through 31–18–21, N.M.S.A.1978 (1980 Supp.). The Criminal Sentencing Act also includes provisions for altering a basic sentence and the procedures for prosecuting an habitual offender. *See* §§ 31–18–17 and 31–18–20, N.M.S.A.1978 (1980 Supp.) But like its predecessor, the Narcotic Drug Act (§§ 54–7–1 through –51, N.M.S.A.1953), the Controlled Substances Act itself, even after amendment, still does not provide the procedure for enforcing under that Act the increased sentence to be applied when defendant is a second or subsequent violator of the trafficking section of the Act. One of the effects of the amendment to § 30–31–20 B(2) is to bring the penalty provisions of the Controlled Substances Act into conformity with penalties for commission of other crimes and subsequent offenses.

The precise issue before us, then, is whether this defendant may be charged in a supplemental information to establish a prior drug conviction, as in habitual offender proceedings, after he has been convicted and sentenced on the "second" offense.

The case law in this area applicable to this case is not consistent or reconcilable. The initial consideration of the procedure

for establishing a prior drug conviction, for purposes of enhanced sentencing, came in *State v. Rhodes*, 76 N.M. 117, 413 P.2d 214 (1966). Defendant there, after conviction under the Narcotic Drug Act and prior to being sentenced, was asked whether he had ever before been convicted of a drug felony. Following his admission of a prior conviction, the court sentenced him to the time provided for second offenders under the Narcotic Drug Act. The Supreme Court reversed holding that there must be "some pleading filed by the state . . . by which a defendant is given notice and an opportunity to be heard before an increased penalty can be imposed." But *Rhodes* made two distinct comments in reaching its decision, which we think are most significant. It rejected any analogy to the habitual offender sentencing statute, saying:

> We have recently had occasions to discuss the difference between the Habitual Criminal Act and the Narcotic Drug Act, insofar as these two statutes relate to subsequent convictions. [Citations omitted.] The Habitual Criminal Act is fairly definite as to how charges should be made. . . . However, the above quoted statute [the Narcotic Drug Act] is completely lacking in any legislative direction *as to procedures* in the event of second and subsequent convictions. Thus the comparison made by the attorney general between the Narcotic Drug Act and the Habitual Criminal Act is of no assistance. [Our emphasis.]

The other observation of *Rhodes* is even more suggestive:

> In this case, there was never any charge *filed* against this appellant which would give him notice that, *if convicted*, he would be sentenced as a second offender. [our emphasis.]

■ *Rhodes* cannot be read to stand for anything less than this:

1. The subsequent conviction sentencing *procedures* of the habitual offender statutes do not apply to sentencing procedures under the Narcotic Drug [Controlled Substances] Act.

2. Before an increased penalty under the Narcotic Drug Act may be imposed, defendant must be given notice by a pleading, and provided an opportunity to be heard.

3. Such notice must be filed *before* conviction and sentencing on the second or subsequent offense.

Notwithstanding what we consider to be the clear essence of *Rhodes*, it was held in *State v. Chavez*, 79 N.M. 741, 449 P.2d 343 (Ct.App.1968), that a supplemental information charging a prior conviction filed after the second conviction, and a hearing thereon, satisfied the *Rhodes* requirements of "essential fairness." *Chavez*, however, did not include in its appraisal of the *Rhodes* requirements what we have shown as Items 1 and 3 above in our distillation of the *Rhodes* decision. *Chavez* was further obfuscated by defendant's reliance there on §§ 54–7–15.2 and –15.3, N.M.S.A.1953, relating to procedures for charging and convicting as a second offender, which were held not to be in effect at the time of his sentencing and which were later repealed and not reenacted into the present Controlled Substances Act.

■ We think *State v. Chavez, supra,* was incorrectly decided, in view of the Supreme Court's decision in *Rhodes*. We are bolstered in that conviction by the Supreme Court's affirmance in *State v. Garduno*, 93 N.M. 335, 600 P.2d 281 (1979), where the indictment itself gave defendant notice that enhancement because of prior drug convictions would be sought on both counts of the indictment. The court held that defendant "had ample notice that a life sentence would be imposed *if he was convicted.*" (Our emphasis.)

■ In the instant case defendant, presumably on the date trial was scheduled, pled guilty to the charges in the indictment after obtaining the trial court's ruling on the enhancement issue. He was immediately sentenced. Because the State failed to properly and timely plead the enhancement penalty it would also seek, as *Rhodes* requires, we are bound under the rule of *State v. Allen, supra,* prohibiting increasing

a sentence after defendant begins to serve it. The State's oversight cannot be allowed to prejudice the defendant.

We do not believe the constitutional infirmity in the enhancement procedure now proposed by the State, and as suggested in our memorandum opinion, is properly termed a double jeopardy issue at this point, because the sentencing requirements of the Controlled Substances Act do not contemplate a separate charge as a multiple offender, nor do the statutes establish any crime, as such. The Act in effect at the time of defendant's offenses directs the sentences which must be imposed if defendant were found to be a second or subsequent offender. Thus, defendant is not "prosecuted" for an offense growing out of the same charges upon which he already had been tried and convicted so as to meet the classical description of double jeopardy. See Ex parte Williams, 58 N.M. 37, 265 P.2d 359 (1954); State v. Goodson, 54 N.M. 184, 217 P.2d 262 (1950). Rather, in the absence of any statutory procedural authorization for imposition of an enhanced trafficking sentence which exceeds the sentence to be imposed on habitual offenders, it is suggested that this defendant be brought before the court under the habitual offender procedure, after having been convicted and sentenced upon more than one trafficking charge, and then advised that his guilty pleas subject him to a more severe sentencing. This procedure, in a narcotics case, according to Rhodes, violates due process.

Defendant relies on State v. Allen, supra, to argue double jeopardy because in that case our Supreme Court said:

Increasing a sentence, after a defendant has commenced to serve it, is a violation of the constitutional guarantee of double jeopardy.

The Allen court expressly rested that declaration upon the language of Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), regarding the scope of the double jeopardy guarantee:

* * * [T]here has never been any doubt of its entire and complete protection of the party when a second punishment is proposed by the same court, on the same facts, for the same statutory offense.

We agree that the effect of proceeding in this case as our memorandum opinion proposed would be to increase a sentence "by the same court, on the same facts," although not "for the same statutory offense," which Ex parte Lange, supra, prohibits as a violation of the double jeopardy clause. But in Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446, 450, (1962), the United States Supreme Court ruled that a state legislature may constitutionally provide for two separate proceedings—trial of the felony charge, and invocation of the habitual offender penalty after conviction—without offending due process because of lack of notice "that the trial on the substantive offense will be followed by an habitual criminal proceeding." However, a method for enforcing the enhanced penalty provided in our Controlled Substances Act at the time of defendant's offenses, as well as at the present time, was not set up as a separate proceeding, nor was the method of enforcement covered in the Act at all, then or now. Rhodes says that enforcement, under the habitual act, of the increased penalty then imposed by the Narcotic Drug Act, is not permissible. Oyler serves as precedent only to permit two such proceedings if habitual offender charges are under consideration, and there exists statutory authority allowing two procedures.

■ We are thus forced to acknowledge that Rhodes, supra establishes the only means by which enforcement of the enhanced sentencing of this defendant's second and subsequent trafficking offenses under the Controlled Substances Act could have been sought. We hold, as did Rhodes, that because there was no specific statutory authorization in the Controlled Substances Act for a second sentencing procedure to implement enhanced sentencing for this defendant's multiple trafficking convictions under the Controlled Substances Act; and because the enhanced sentence would have exceeded the sentence which could have been imposed on an habitual offender, it would be a denial of due process in the

absence of some pleading filed prior to conviction which notified defendant that he would be sentenced as a second or subsequent offender if convicted, to proceed to enhance the sentence under a separate proceeding after the initial sentence was imposed. Thus, no such enhanced sentence for this defendant could be sought under the procedures applying to habitual offender enhancements.

 This opinion should not be construed to mean, however, that defendants convicted of second or subsequent trafficking offenses after July 1, 1979, may not be processed as habitual offenders under the Criminal Sentencing Act. The disparity between penalties for multiple trafficking offenses and penalties for other multiple criminal offenses has been removed by the 1980 amendment to § 30–31–20, *supra*; one convicted of multiple trafficking offenses committed after July 1, 1979 fits the definition of an habitual criminal found in § 31–18–17, *supra*; and the Criminal Sentencing Act provides the separate, statutory procedure for sentence enhancement of habitual offenders which *Oyler, supra*, requires.

We reverse our prior memorandum decision in this matter and affirm the trial court's order barring any enhancement proceedings in this case.

LOPEZ, J., concurs.

WOOD, C. J., concurs in part and dissents in part.

WOOD, Chief Judge (concurring in part and dissenting in part).

The second question posed by defendant in his petition for certiorari, and certified to us for decision by the Supreme Court, highlights the importance of the first issue, the State's right to appeal. Defendant acquired a ruling from the trial court to which he was not entitled and, in the second issue, seeks to wrap that improper benefit in a constitutional guarantee. In the first issue he seeks to prevent appellate review of that improper ruling. The public, as well as defendant, is entitled to fair play. See

*State v. Day*, 94 N.M. 753, 617 P.2d 142 (1980). Thus I agree with, and join in, Judge Walters' discussion of the State's right to appeal.

I disagree with Judge Walters' discussion of the second issue, and disagree with the result reached because the second issue disregards a basic fact. The question of seeking an enhanced sentence for second and subsequent convictions for trafficking in heroin did not arise for the first time *after* sentencing or even *after* conviction. The enhancement issue was before the trial court prior to conviction. Thus, I do not comment on Judge Walters' legal discussion in Point II other than to state my disagreement with her reading of *State v. Rhodes*, 76 N.M. 177, 413 P.2d 214 (1966). *Rhodes* holds that there must be notice and an opportunity to be heard; in my opinion, it does not decide the time and procedure for giving notice.

*Rhodes* held that notice that enhancement would be sought must be given by "some pleading filed by the state . . . ." No such pleading was filed by the State; the defect in seeking enhancement was the absence of such a pleading.

Defendant was indicted May 31, 1979 on three counts of trafficking in heroin, three different dates being alleged. On June 20, 1979 he filed a discovery demand asking to be informed of any prior criminal record of defendant. On June 30, 1979 he moved for disclosure of his prior criminal record; this motion was granted August 6, 1979. Due to change in counsel, a trial setting was vacated and the Supreme Court extended the time for trial under R.Crim.Proc. 37. Trial was rescheduled during the week of February 5, 1980. On February 5, 1980 defendant moved for severance of the three counts.

On February 7, 1980 defendant moved "to strike the enhancement penalty (if any) contained in the indictment. . . ." This motion asserted two grounds: (1) that the indictment did not charge that defendant was subject to an enhanced sentence; and (2) the defendant's prior federal conviction

**490**

could not be counted as a prior offense. On that day, after a hearing, the trial court granted the motion.

If the trial court's order had done no more than grant the motion to strike, it would have been proper because enhancement had not been pleaded. However, the order also stated, "the enhancement proceeding is dismissed with prejudice." Defendant's motion did not seek this ruling.

There was no basis for the "with prejudice" ruling at the time it was made by the trial court. Defendant's various discovery demands show that he was aware that enhancement might be involved; his motion to strike also shows this awareness. It has not been disputed that defendant had oral notice that the State would seek an enhanced sentence; a hearing was held on defendant's motion to strike. There was no due process issue concerning notice and an opportunity to be heard. At the time the trial court made its "with prejudice" ruling no trial had occurred, jeopardy had not attached, and there was no double jeopardy issue.

Immediately after the "with prejudice" ruling, defendant pled guilty to each of the three counts; the trial court accepted the plea and gave defendant a suspended sentence. At this point, we do not have a transcript of proceedings, the matter having been handled on the summary calendar. The docketing statement recites that the motion to strike, filed on February 7, 1980, was heard on that date in disregard of the State's objection that it had just received the motion and needed time to prepare. The docketing statement also recites that the trial court accepted the guilty pleas over the State's objection and in disregard of the State's position that it would appeal the "with prejudice" dismissal. In this appeal I accept the docketing statement allegations as true. *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978).

Because he has begun to serve the sentence imposed after his guilty plea, defendant contends the Constitution protects him from efforts by the State to seek enhancement of the sentence. My answer is that the sentence was not valid because of error in the proceedings prior to imposition of sentence. My opinion is that Judge Hendley's Memorandum Opinion correctly permitted further proceedings under the facts of this case.

The decision concerning the second question is of limited application because the trafficking offenses to which defendant pled guilty were committed prior to the effective date of the Criminal Sentencing Act. Laws 1977, ch. 216, § 18. As to the applicability of that Act for second and subsequent trafficking offenses, see §§ 31-18-12, 31-18-17, 31-18-20, N.M.S.A.1978 (1980 Cum.Supp.) and § 30-31-20(B), N.M.S.A.1978 (1980 Repl. Pamphlet).

The decision concerning the first question, the State's right to appeal, is of vital importance to the administration of criminal justice. The Supreme Court, in extraordinary writ proceedings, has required trial courts to enforce sentencing provisions enacted by the Legislature. See citation to such a proceeding in *State v. Gabaldon*, 92 N.M. 230, 585 P.2d 1352 (Ct.App.1978). In this case, however, extraordinary writ proceedings would not have been effective to correct the trial court's errors because of the hurry-up guilty pleas and sentencing immediately after the errors were committed. The right to appeal is necessary to correct such maladministration of criminal justice.