372 P.2d 837

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Rudolfo LUCERO, Defendant-Appellant.**

**No. 7015.**

Supreme Court of New Mexico.

June 8, 1962.

Donnan Stephenson, Santa Fe, for appellant.

Earl Hartley, Atty: Gen., L. D. Harris, William E. Snead, Asst. Attys. Gen., Santa Fe, for appellee.

COMPTON, Chief Justice.

Appellant was convicted on an information charging him, Pete Gonzales and Porfilio Baca in Count I with breaking and entering in the nighttime with intent to commit larceny, and in Count II with grand larceny. The information specifically charged that on or about August 30, 1960, appellant and the others broke into and entered Campbell's Service Station, 734 San Mateo, S.E., Albuquerque, in the nighttime, with intent to commit the crime of larceny, and did steal therefrom certain property of the value in excess of $50.00. The information referred to Sections 40–9–6, 40–45–1 and 40–45–2, 1953 Compilation. The other defendants pleaded guilty. On conviction, appellant was sentenced to serve not less than 1 nor more than 3 years on Count I and not less than 1 nor more than 10 years on Count II, the sentences to run concurrently. From the judgment imposing sentences, he appeals.

On August 29, 1960, appellant, Baca, Gonzales and one Amador purchased beer and wine and "went on a drunk" for the rest of the day, driving around in Amador's car. When it started getting dark, they dropped Amador off at the home of his girl friend under an arrangement whereby appellant was to use the car until 11 :00 p. m. and then go back and pick up Amador. Thereafter, the service station was broken into and various items stolen.

About 11 :30 p. m. a police officer who had previously that evening been investigating reports of burglaries in progress in the 600 and 700 blocks of San Mateo observed a car pulling out of the parking lot of Lyle Adjustment Company in the 700 block of San Mateo, and moving toward that company's driveway. The officer pulled alongside the car, saw appellant driving and the two oth-

ers in the car. As he was about to get out and talk to them, appellant drove off and a chase ensued, during which speeds of 70 or 80 miles per hour were attained. The chase ended several miles away when appellant stopped the car, got out and ran. He was found lying behind a wall hiding and was apprehended. The other two had remained at the car and had been taken into custody by an officer in response to radio calls. Another officer arrived on the scene, searched the car and found articles identified as belonging to the owner of the service station. A later search of the car was made after it had been impounded.

Baca and Gonzales testified that they made two trips to the service station; that appellant was "passed out" on both occasions; that when they came out of the station the second time appellant had awakened and gotten under the steering wheel; and that they then got into the car and told appellant to drive off. Appellant's testimony was identical, as to being "passed out," nevertheless, a detective assigned to investigate the burglary recovered from an arroyo a candy machine which had been stolen from the service station. He testified that he took appellant to the detective division to interrogate him. The pertinent portion of his testimony is as follows:

"A. * * * and at the time of bringing Mr. Lucero in, this candy machine was in the room on the table. I inquired if he had seen it before and he said it looked like the one they had taken and broken up out in the hills. At about this point he made the statement and said he knew we shouldn't have gone back there twice and during the course of interrogation which lasted approximately thirty minutes he did admit being in the station, carrying out items and placing them in a car, breaking open the candy machine and returning to the station the second time, however, he qualified these remarks by putting in from time to time that he was intoxicated and didn't remember too much of the details. When I inquired about where the money was that was missing, he either couldn't or wouldn't remember. He did make a statement he believed that when they returned to the station the second time that they had left behind them in the foothills all the items that had been taken the first time, which would presumably include the money. * * *"

Appellant denied before and during the trial making any of these statements.

It is the appellant's contention that the court below committed fundamental error in (a) admitting the testimony set out above as to statements claimed to have been made by appellant; (b) neglecting to instruct the jury with respect to exculpatory material contained in the purported statements; (c) improperly instructing the jury regarding the requisite intent neces-

sary to commit larceny; (d) erroneously instructing the jury on the essential elements of breaking and entering in the nighttime, there being no proof to support the conviction on this charge; (e) erroneously instructing the jury on "grand larceny"; and (f) violating the constitutional rights of appellant in receiving evidence obtained by unlawful search and seizure. It should be noted, however, that none of the points relied upon here for reversal were preserved at the trial below for review by this court.

The doctrine of fundamental error has its place in this jurisdiction. State v. Garcia, 19 N.M. 414, 143 P. 1012, 1014. But the errors complained of must be such as go to the foundation of the case, and which deprive the defendant of rights essential to his defense. State v. Sena, 54 N.M. 213, 219 P.2d 287. The discretion residing in this court to apply the doctrine is not to be exercised in aid of strictly legal, technical or unsubstantial claims. Where substantial justice has been done, the parties must have taken and preserved exceptions in the lower court before this court will notice them on appeal. State v. Garcia, supra.; State v. Smith, 51 N.M. 328, 184 P.2d 301.

[2] We have carefully considered the record in this case and find that substantial justice has been done.

We next dispose of the contention that the crime of grand larceny was not correctly charged or covered by the court's instructions. It is appellant's position that the information merely accuses him of simple larceny of property having a value in excess of $50.00; that the words "grand larceny" used in Section 40–45–2 noted on the information are not part of the statute and that the information does not constitute a charge in the words of the statute; that the larceny of property having a value in excess of $50.00, as charged, more specifically fits the crime of larceny from a store or shop as defined in Section 40–45–6, which provides a lesser punishment than appellant received.

The information in Count II charged appellant with stealing from Jewell Campbell d/b/a Campbell's Service Station certain property in excess of $50.00, and referred to the sections of the statute under which the appellant was so charged, as provided in Section 41–6–7(2). These were Section 40–45–2, headed "grand larceny" and providing that anyone who commits larceny by stealing the property of another in excess of the value of $50.00 shall be punished as provided in Section 40–45–1; and Section 40–45–1, providing penalties for conviction of crime of larceny depending upon whether the value of the property stolen was less than, or in excess of, the value of $50.00.

The title of the Act covering these Sections, Laws 1953, Ch. 135, as amended by Laws 1955, Ch. 9, is as follows:

"An Act Relating to Crimes, Fixing a Minimum Value for Grand Larceny, Embezzlement, and a Maximum Value for Petit Larceny * * *."

This disposes of appellant's contention that the only name given by statute to the crime is simply larceny. Section 40–45–2 obviously sets a minimum value for grand larceny and so indicates in its title. In any event, the crime as charged is covered by that section of the statute, as noted on the information, and we see no room for a conclusion that a reading of the face of the information would indicate he was being charged with larceny from a store or shop of property exceeding the value of $10.00. The information charging grand larceny, where the offense is particularized by referring to Section 40–45–2 is sufficient when the crime is covered by that section. State v. Johnson, 60 N.M. 57, 287 P.2d 247.

The appellant further contends that in its instructions to the jury on the offense of larceny, the trial court gave mere abstract instructions and did not apply the applicable statute to the facts of the case. In addition, it is asserted that the jury was not properly instructed regarding the requisite intent necessary to commit larceny.

The jury was informed in full of the charge of larceny against appellant and of that portion of Section 40–45–2 entitled grand larceny, which covered the charge.

It was further instructed as to the essential elements of larceny; that there must be an intent at the time of taking to permanently deprive the owner thereof and permanently appropriate it to the use of the party taking; that the taking must be accompanied by circumstances showing a felonious intent to steal; that in view of the evidence as to intoxication it was important for it to consider whether the appellant was so intoxicated at the time of the alleged offense as to be incapable of forming the necessary felonious intent; that if there was a reasonable doubt in this regard he must be acquitted.

Appellant's defense was drunkenness, and he contends there can be no reconciliation of the instruction on lack of intent because of intoxication, and the instruction given which states that voluntary drunkenness is no excuse or justification for crime. There is no merit to this contention. Voluntary intoxication alone is not a defense to a charge of larceny. State v. Roybal, 66 N.M. 416, 349 P.2d 332. But if a defendant claims he was so intoxicated as to be unable to form the necessary intent, the question of intent is a matter for the jury. The jury was so instructed.

The testimony of the detective, previously mentioned, as to statements purported to have been made by appellant, was properly admitted. And, while the voluntary character of a confession must be

**274**

established before it is admissible, State v. Vaisa, 28 N.M. 414, 213 P. 1038, an admission is receivable in evidence without preliminary proof as to its having been made voluntarily. State v. Lindsey, 26 N.M. 526, 194 P. 877.

Wharton's Criminal Evidence, 12th Ed., Vol. 2, § 337, p. 10, distinguishes confessions and admissions as follows:

"A confession is an acknowledgment in express terms, by a party in a criminal case, of his guilt of the crime charged, while an admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt. * * *"

See also 22A C.J.S. Criminal Law § 730; State v. Lindsey, supra.

We find nothing in the statements purportedly made by appellant that could be said to be a confession of guilt of the crimes charged within the above definition, but rather incriminating statements which, taken together with the other testimony, if believed by the jury, would tend to establish his guilt.

■ Nor do we find anything in the purported statements that could be said to be exculpatory within the meaning of that word as discussed in State v. Langdon, 46 N.M. 277, 127 P.2d 875, employing it in the sense of an excuse or justification. The statements in question would at most indicate an excuse for not remembering the details of the evening's activities, but could not be said to indicate an excuse or justification for the commission of any of the acts referred to because of a lack of sufficient intent as the result of intoxication. As stated in State v. Vaisa, supra: The rule that a statement containing exculpatory statements may be considered in defendant's behalf only applies in cases where such are the facts."

Thus, there was no error in the court's failure to instruct on exculpatory material.

■ Appellant's complaint that there was a failure of proof that the crimes charged were committed in the nighttime or that the structure broken into and entered was "not adjoining to or occupied as a dwelling house" which were essential elements to be proved in the crime charged in Section 40-9-6, is likewise without merit. Suffice it to say that the appellant was apprehended at about 11:30 p. m. after a wild chase. By his own testimony when "it started getting dark" he and his friends were still driving around drinking and thereafter dropped Amador off at his girl friend's house. Between this time and 11:30 p. m. the offenses were committed. The only reasonable inference that can be drawn is that the offenses were committed in the nighttime.

■ We find nothing in the record that would indicate the service station adjoined

or was occupied as a dwelling. The owner testified that his residence was elsewhere. All logical inferences must be drawn to support the verdict. State v. Martinez, 53 N.M. 432, 210 P.2d 620; State v. Romero, 67 N.M. 82, 352 P.2d 781. We must hold that there was ample evidence to warrant the conclusion that appellant broke and entered in the nighttime a place not adjoining to nor occupied as a dwelling house, with the intent to commit the crime of larceny. And, while the essential elements of the offense charged, and to be established by the evidence in order to warrant a conviction, are not as clearly stated in the court's instructions as they should be, this does not constitute fundamental error. Compare State v. Mares, 61 N.M. 46, 294 P.2d 284.

▮▮▮▮ Lastly, appellant contends that his constitutional rights were violated by the introduction of evidence which was procured by an unlawful search and seizure because there was no evidence that a search warrant was ever obtained or produced. In support of this contention appellant relies on Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, holding that all evidence obtained by searches and seizures in violation of the Constitution is inadmissible in a state court. If there had been an illegal search and seizure in this case, Mapp v. Ohio would certainly apply. The question then is whether the lack of a search warrant in this case renders the search illegal.

We think not. It would serve no useful purpose to set forth here all the events leading up to the arrest of appellant and his companions or the evidence tending to show that the arresting and searching officers had probable cause to believe that appellant and his friends had committed a felony. They had fled from the driveway of a company where earlier a burglary had been reported to be in progress. This case is within the well-established rule that a warrant is not required for the search of a movable vehicle if the officers have reasonable cause to believe that the automobile contains contraband or stolen goods. U. S. v. Haith, (U.S.C.A. 4th Cir. 1961), 297 F.2d 65; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; People v. Brajevich, 174 Cal.App.2d 438, 344 P.2d 815. See also 79 C.J.S. Searches and Seizures § 69(e); 47 Am.Jur., Search and Seizure, § 19. Therefore, the resulting search and seizure of the goods identified as stolen from Campbell after the arrest of the parties cannot be said to be illegal. In any event, it is questionable that the constitutional provisions guaranteeing immunity from unlawful search and seizure could have been asserted by appellant in the court below. These provisions have been held to belong only to the person, effects and premises of a party whose property is searched. The person claiming this immunity must also claim ownership, legal custody and control of the automobile, or

**276**

some proprietary right or interest therein. McDoulett v. State, (Okl.Cr.1961), 368 P.2d 522. This the appellant never did.

We have carefully considered the record and find that the points urged for reversal deal strictly with legal questions. Substantial justice appears to have been done. This is not, therefore, a proper case for the application of the doctrine of fundamental error. State v. Varos, 69 N.M. 19, 363 P.2d 629.

The judgment should be affirmed. It is so ordered.

MOISE and NOBLE, JJ., concur.

CHAVEZ and CARMODY, JJ., not participating.