866 P.2d 378

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Victoria A. ALINGOG, Defendant–
Appellee.**

**No. 14191.**

Court of Appeals of New Mexico.

Sept. 17, 1993.

Certiorari Granted Dec. 30, 1993.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

Robert M. Schwartz, Steven S. Suttle, Albuquerque, for amicus curiae NM District Attorneys' Ass'n.

Gregg Vance Fallick, Barbara E. Bergman, Ray Twohig, Albuquerque, for amicus curiae NM Criminal Defense Lawyers Ass'n.

## OPINION

BIVINS, Judge.

The State appeals from an order dismissing, on double-jeopardy grounds, Count I of a criminal information, aggravated assault on a peace officer with a deadly weapon, NMSA 1978, § 30–22–22(A)(1) (Repl.Pamp.1984), based on Defendant's plea of no contest to Count V, resisting, evading, or obstructing an officer, NMSA 1978, § 30–22–1 (Repl. Pamp.1984). Three issues are raised: (1) whether the district court erred in determining that double jeopardy barred conviction and punishment of Defendant on the aggravated assault charge; (2) whether the district court erred, under *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), in making the double-jeopardy determination before giving the jury an opportunity to convict or acquit Defendant; and (3) whether double jeopardy bars the retrial of Defendant on remand. We reverse on the second issue and, thus, do not reach the first issue, and we conclude that double jeopardy does not bar Defendant's retrial on remand.

## I. BACKGROUND

On September 15, 1991, Defendant led officers from several law enforcement agencies on a prolonged car chase along Highway 54 near Alamogordo. The chase began when, after stopping Defendant at a checkpoint a short time earlier, Border Patrol Agent Holmes again stopped Defendant and observed signs of intoxication. Agent Holmes requested the presence of State Police Sergeant Arana and, while Holmes and Defendant waited for Sergeant Arana to arrive, Defendant started her vehicle and drove north on Highway 54. Agent Holmes pursued.

Eventually, Sergeant Arana joined in the pursuit, as did three Otero County Sheriff's Deputies. Defendant ignored commands to pull her vehicle over and continued to drive erratically at a high rate of speed. All vehicles participating in the chase were marked and had their flashing lights activated, and the officers were in full uniform.

The three deputies eventually were able to block Defendant's car and bring it to a stop. However, Defendant placed her car in reverse and drove directly at Deputy Woltz, who had exited his car. Defendant did not strike the deputy, but, despite his firing three rounds at a tire of Defendant's vehicle, Defendant was able to escape and drive northbound at high speed.

Later, Defendant attempted to run another roadblock, but failed. Defendant had to be bodily removed from her vehicle by the officers. She continued to resist when Deputy Woltz and other officers tried to handcuff her.

Based on these events, the State charged Defendant by criminal information with seven counts, only one of which was a felony: aggravated assault on a peace officer with a deadly weapon. The remaining six counts included the charge of resisting, evading, or obstructing an officer.

On the day of the trial, before jury selection, Defendant entered a plea of no contest to the six misdemeanor charges, including resisting, evading, or obstructing an officer. After entering this plea, Defendant moved that the remaining count of aggravated assault on a peace officer with a deadly weapon be dismissed on double-jeopardy grounds. Defendant further requested that the district court take her motion under advisement until after the State had presented its case, reasoning that the court had to hear the evidence in order to rule on the double-jeopardy motion. The prosecutor did not object to this procedure.

After the State rested, Defendant renewed her motion for dismissal based on double jeopardy. After argument by counsel, the district court first denied the motion, but then, after further argument, granted it. This appeal by the State followed.

## II. DISCUSSION

Because we find the *Johnson* issue to be dispositive of this appeal, we address it first. Later in our opinion, we address Defendant's argument that double jeopardy bars reprosecution on remand.

### A. Ohio v. Johnson

*Johnson* concerned a defendant charged in the same indictment with four offenses stemming from the same incident. At arraignment, the defendant offered to plead guilty to two of the charged offenses, and the trial court accepted these pleas over the objection of the State. The trial court then granted the defendant's motion to dismiss the remaining two charges based on double jeopardy. The trial court agreed with the defendant that the two charges to which the defendant pled guilty were lesser included offenses of the remaining two charges.

In reversing the judgment of the Ohio Supreme Court, which affirmed the trial court, the United States Supreme Court held that the Double Jeopardy Clause did not bar further prosecution of the defendant on the remaining charges. *Johnson*, 467 U.S. at 494, 500, 104 S.Ct. at 2538, 2541. The Court ruled that neither the double-jeopardy protection against cumulative punishments in a single prosecution, *id.* at 499–500, 104 S.Ct. at 2540–2541, nor the double-jeopardy protection against multiple prosecutions for the same offense, *id.* at 500–02, 104 S.Ct. at 2541–43, prevents the State from continuing prosecution on a greater offense when a defendant has pled guilty, in the same proceeding, to a lesser included offense.

Turning to the instant appeal, our review of the record indicates that the district court's dismissal of the aggravated assault charge against Defendant was based on the double-jeopardy protection against cumulative punishments in a single prosecution. Additionally, Defendant continues to make a "single prosecution" argument on appeal, citing *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). Even assuming, without deciding, that punishment of Defendant for both the aggravated assault charge and the resisting, evading, or obstructing charge would

violate this protection, *Johnson* clearly dictates that the State should be allowed the chance to obtain a determination of guilt or innocence on the aggravated assault charge. Because its reasoning is so clearly on point, we quote at length from the Supreme Court's opinion:

[B]efore [the defendant] can ever be punished for the [greater offenses] he [or she] will first have to be found guilty of those offenses. The trial court's dismissal of these more serious charges did more than simply prevent the imposition of cumulative punishments; it halted completely the proceedings that ultimately would have led to a verdict of guilt or innocence on these more serious charges. Presumably the trial court, in the event of a guilty verdict on the more serious offenses, will have to confront the question of cumulative punishments ... but because of that court's ruling preventing even the trial of the more serious offenses, that stage of the prosecution was never reached. While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution.

467 U.S. at 499–500, 104 S.Ct. at 2541. This language makes it clear that the single-prosecution double-jeopardy protection will not be implicated in this case unless convictions are obtained on both the resisting, evading, or obstructing charge and the aggravated assault charge.

We are not persuaded by Defendant's attempts to distinguish *Johnson*. First, Defendant points out that the State objected to the entry of guilty pleas in *Johnson*, while the State here did not object to Defendant's no contest plea. We fail to see how this fact affects the applicability of *Johnson*'s rationale to the instant appeal. Defendant seems to suggest that, by failing to object, the State somehow forfeited its right to a "full and fair opportunity to present its case." We do not believe that the State's willingness to accept a plea to a lesser charge has any bearing on the State's entitlement to seek a determina-

tion of guilt or innocence on the more serious charge.

Defendant also suggests that her case raises a concern about "prosecutorial overreaching," a concern that the *Johnson* Court specifically found was not present in that case. However, *Johnson* discussed prosecutorial overreaching in the context of distinguishing *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), a case involving successive prosecutions. *Johnson*'s reasons for distinguishing *Brown*, and for finding inapplicable the concern about overreaching, were rooted in the fact that *Brown* involved successive prosecutions while *Johnson* involved a single prosecution. *Johnson*, 467 U.S. at 501–02, 104 S.Ct. at 2541–43. The instant appeal also involves a single prosecution, and the *Johnson* reasoning applies equally well here. We believe, as did the *Johnson* Court, that "[t]here simply has been none of the governmental overreaching that double jeopardy is supposed to prevent." *Id.* at 502, 104 S.Ct. at 2542.

Finally, Defendant claims that *Johnson* is distinguishable because, unlike the State in *Johnson*, the State here "received a full and fair opportunity to present its entire case." We concede that the State here had an opportunity to present its case, but reject Defendant's argument because the *Johnson* Court was concerned with the State's right to "one full and fair opportunity *to convict* those who have violated its laws." *Id.* at 502, 104 S.Ct. at 2542 (emphasis added). Here, the State clearly was deprived of this opportunity.

Under *Johnson*, the district court erred in dismissing the charge of aggravated assault on a peace officer with a deadly weapon.

### B. *Reaching Ohio v. Johnson*

Defendant, however, contends that the State cannot rely on the doctrine set forth in *Johnson* because the State did not raise the issue below. *See* SCRA 1986, 12–216(A) (Repl.1992). We agree with Defendant that the State failed to bring the *Johnson* issue to the attention of the trial court and, thus, failed to preserve the issue. However, we disagree with Defendant's claim that the State's failure to raise the *Johnson* issue

below precludes us from addressing the issue. Although we are not certain that the present circumstance comes squarely within the scope of SCRA 12–216(A), that provision states guiding principles that should inform us whenever we are asked to consider issues not raised in the trial court. With these principles in mind, we hold that, under the facts of this case and under *Johnson*, the district court's dismissal of the State's case constituted fundamental error. *See* SCRA 12–216(B)(2).

1. *New Mexico Law on Fundamental Error: Application of the "Miscarriage of Justice" Standard to the State*

Neither Defendant nor the State has drawn our attention to, nor are we aware of, any New Mexico cases in which an appellate court of this state applied the doctrine of fundamental error to an issue raised for the first time on appeal by the State. Thus, we address an issue of first impression in New Mexico. Because of its significance, we scheduled oral argument and directed counsel to focus on this issue. We also invited amici curiae briefs from the New Mexico Criminal Defense Lawyers Association and the Administrative Office of the District Attorneys. Their briefs addressing this issue were most helpful to the Court.

█ We conclude that the doctrine of fundamental error generally is applicable to issues raised by the State. However, we list below certain limiting factors that we believe are important in determining, in any particular case, whether the State may successfully raise an issue for the first time on appeal.

New Mexico courts generally define fundamental error as follows: " 'The doctrine of fundamental error * * * will be invoked by an appellate court only when the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or when the court considers it necessary to avoid a miscarriage of justice.' " *State v. Rodriguez*, 113 N.M. 767, 774, 833 P.2d 244, 251 (Ct.App.) (quoting *State v. Ortega*, 112 N.M. 554, 566, 817 P.2d 1196, 1208 (1991)), *cert. denied*, 113 N.M. 636, 830 P.2d 553 (1992). The first-listed standard for invoking

fundamental error, that allowing a conviction to stand would "shock the conscience," obviously does not apply where the State challenges a dismissal of criminal charges. However, we believe that the second-listed standard, that addressing error is necessary to avoid "a miscarriage of justice," can be applied to the State. We disagree with Defendant's argument that New Mexico case law "suggest[s] that [the doctrine of fundamental error] does not apply to the prosecution." We do not believe that miscarriages of justice, by definition, affect defendants only and do not believe that we should lithify an injustice simply because it adversely affects the State, rather than a defendant.

Application to the State of the "miscarriage of justice" standard for invoking fundamental error would not be inconsistent with other definitions of fundamental error expressed by New Mexico courts. *See, e.g.,* *State v. Lucero,* 70 N.M. 268, 272, 372 P.2d 837, 840 (1962) (fundamental error present when error "go[es] to the foundation of the case" and when "substantial justice" has not been done); *State v. Garcia,* 19 N.M. 414, 421–22, 143 P. 1012, 1015 (1914) ("If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court ... before we will notice them here."); *State v. Bencomo,* 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct.App.1990) (in context of guilty plea, fundamental error occurs where error is clear and it clearly affected the outcome of the case). These judicial definitions are neutral, and are not aimed at defendants only.

Moreover, we are not persuaded that the State and defendants should be given different procedural treatment when appealing from the final disposition of a case (as opposed to interlocutory appeals). *See* N.M. Const. art. VI, § 2 (aggrieved party has absolute right of appeal); SCRA 1986, 12–202 (Repl.1992) (requirements for taking appeal phrased in neutral terms; additional requirements for State appeals apply only to interlocutory appeals from suppression orders or orders to return seized property); SCRA 12–216; *State v. Alvarez,* 113 N.M. 82, 84, 823 P.2d 324, 326 (Ct.App.) (State is an aggrieved party and has a constitutional right of appeal

from dismissal with prejudice), *cert. denied,* 113 N.M. 23, 821 P.2d 1060 (1991). *But see* *State v. Baca,* 92 N.M. 743, 745, 594 P.2d 1199, 1201 (Ct.App.1979) (indicating, in dicta and by implication, that the dismissal of appeals by the State should be treated differently from dismissals of appeals by defendants). We do not believe that *Baca* supports such differential treatment, for two reasons. First, the *Baca* Court's statement that "[w]e doubt that a rule of liberal construction [of appellate rules, to the end that appeals are decided on their merits,] should be applied in favor of the State," was pure dicta. *Baca,* 92 N.M. at 745, 594 P.2d at 1201. The Court expressly declined to "base [its] decision on the applicability or nonapplicability of a rule of liberal construction." *Id.*

Second, we question the statement in *Baca* that "when a defendant's appeal is dismissed, the dismissal only affects the defendant. Dismissal of the State's appeal in this case would affect the defendant as well as the State because the State's appeal seeks reinstatement of the criminal charge." *Id.* The ultimate disposition of any criminal appeal, whether it be dismissal, some other procedural disposition, or a decision on the merits, affects both the appellant and the appellee, regardless of who is appealing. While *Baca* identified a potential effect of a State's appeal, reinstatement of criminal charges, it failed to identify potential effects of a defendant's appeal, such as retrial or outright dismissal of charges. Inherent in the idea that retrial or dismissal do not affect the State is a failure to recognize the State's interest in having the opportunity to prove a defendant's guilt. Moreover, we do not read *State v. Linam,* 90 N.M. 302, 303, 563 P.2d 96, 97 (1977), the case relied on by *Baca* for the proposition that a defendant's appeal only affects the defendant, as addressing the effect of a defendant's appeal on the State. Rather, we interpret *Linam* as simply making the point that dismissal of the defendant's appeal in that case would have affected the defendant but not the defendant's counsel, who, as determined by the *Linam* Court, was the person actually responsible for the appellate rules violations.

■ Thus, we believe that, whenever possible, the State and defendants should be given identical procedural treatment on appeal, including evenhanded application of the rules governing the scope of appellate review.

### 2. Factors Limiting the Application of Fundamental Error to the State: United States v. Krynicki

Since we determine that the doctrine of fundamental error is applicable to the State, we now must determine whether there was fundamental error in the instant case. Before doing so, however, we believe it useful to put in context this exception to the ordinarily applicable preservation requirements. A leading case in the area, *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), clearly expresses the general rule governing scope of appellate review:

> Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.

However, *Hormel* also recognizes that:

> There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below.

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with

this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Id.* at 557, 61 S.Ct. at 721 (citation omitted). Against this backdrop, we now turn to the question of whether fundamental error exists in the present case.

In developing the criteria necessary to answer this question, we find guidance in *United States v. Krynicki*, 689 F.2d 289 (1st Cir.1982). *See also State v. Card*, 48 Wash. App. 781, 741 P.2d 65, 67 (1987) (court addresses State's argument, raised for the first time on appeal, based on notion of "fundamental justice"). *But see* Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule*, 40 Vand.L.Rev. 1023, 1035–45 (1987) (criticizing the rationale of *Krynicki*).

In *Krynicki*, the government appealed from a dismissal with prejudice that was based on the trial court's determination that the government had violated the federal Speedy Trial Act (the Act). *Krynicki*, 689 F.2d at 290–91. On appeal, the government argued that the provision of the Act relied on by the trial court was inapplicable under another provision of the Act, a new argument not raised or preserved below. The circuit court agreed, stating that the provision newly cited by the government "squarely governs this case." *Id.* at 292. In explaining why it reached the merits of the government's argument, the court outlined four factors: (1) the new issue was purely legal and its resolution would not have been aided by further fact development; (2) the proper resolution of the issue was not in doubt; (3) the issue was almost certain to arise in other cases; and, "most important," (4) declining to reach the issue would have resulted in a "miscarriage of justice" by denying the public's "legitimate and significant interest in prosecuting suspected criminals." *Id.* at 291–92.

■ We find *Krynicki* persuasive and apply its reasoning to the instant appeal. We acknowledge that the *Krynicki* court did not explicitly apply the doctrine of fundamental error, relying instead on the limited discretion of federal courts of appeals to examine

issues raised for the first time on appeal where proper resolution is beyond any doubt or where injustice might otherwise result. *Compare Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) *with* SCRA 12–216. However, we view the *Krynicki* analysis as being completely consistent with fundamental error analysis. What is explicit in the *Krynicki* analysis is implicit in the fundamental error analysis: an appellate court may reach an issue not raised below when the court identifies clear error that can be corrected easily and accurately on appeal without prejudice to an opposing party arising from the failure to raise the issue below, when justice demands that the error be corrected.

As in *Krynicki,* the question here is purely legal and would not benefit from further fact development. The record pertinent to the *Johnson* issue is complete. The pertinent facts are that Defendant was charged in the same information with both aggravated assault on a peace officer and resisting, evading, or obstructing an officer; that Defendant pled no contest to the charge of resisting, evading, or obstructing an officer; that Defendant's prosecution was terminated before a determination of guilt or innocence could be made on the charge of aggravated assault on a peace officer; and that the ground for terminating Defendant's trial was double jeopardy, based on the claimed merger of the two charges. These facts are conclusively established by the record.

Also, the resolution of the *Johnson* issue is beyond dispute. As we discussed above, *Johnson* clearly dictates that the district court erred when it dismissed the State's case on double jeopardy grounds.

The third *Krynicki* factor also is present here. The issue of whether a plea of no contest or guilty to a claimed lesser included offense bars further prosecution, in the same proceeding, on the claimed greater offense is almost certain to arise again. "Thus, declining to reach this straight-forward legal issue will neither promote judicial economy, nor aid the administration of the criminal justice system." *Krynicki,* 689 F.2d at 292. It could be argued that the obvious applicability of *Johnson* to this issue will prevent the issue

from arising again. However, we point out that *Johnson,* decided in 1984, was just as obviously applicable at the time of the proceedings against Defendant, and yet her case still was dismissed erroneously.

Finally, failing to reach the *Johnson* issue would result in a miscarriage of justice. The public has a strong interest in seeing suspected criminals prosecuted. Moreover, the record in this case seems to indicate an effort by defense counsel to surprise the State and the district court. While we have no reason to view defense counsel's actions as anything other than valid trial tactics, *but see State v. Garner,* 90 Md.App. 392, 601 A.2d 142, 143 (1992) (where the defendant sought to avoid more serious charge by pleading guilty to lesser charges, court stated that double jeopardy "was never intended to be a sword with which a defendant could opportunistically manipulate or disrupt proper charges properly filed against him"), we also recognize that the defense counsel's timing may have been one cause of the prosecutor's failure to raise *Johnson* and the trial judge's decision to make a dispositive ruling mid-trial. Also, appellate defense counsel, at oral argument, seemed to agree that Defendant's trial counsel had a duty to call the judge's attention to authority which could be considered controlling. This was not done. In view of these factors, and the concomitantly strong public interest in prosecuting Defendant, it would be a miscarriage of justice to deprive the State of the chance to submit its case to a fact-finder for a determination of guilt or innocence.

### 3. *Conclusion*

While we offer several factors we find to be significant in determining whether fundamental error should be applied to the State in a particular case, we announce no general rule. Rather, we simply attempt to heed the admonishment of a fellow jurist: "No appellate court should ever break through the formal design [for limiting the scope of appellate review] without taking conscious account of the conflicting values necessarily implicated in the decision to do so." J. Dickson Phillips, Jr., Circuit Judge, United States Court of Appeals, Fourth Circuit, *The Appel-*

*late Review Function: Scope of Review,* 47 Law & Contemp. Probs., Spring 1984, at 1, 4 (emphasis deleted). After taking such an account, we conclude that the district court's dismissal of the State's case against Defendant was contrary to the public's strong interest in seeing suspected criminals prosecuted and resulted in a miscarriage of justice. By so concluding, we are required to address Defendant's argument that double jeopardy bars remand for a new trial.

### C. *Reprosecution on Remand*

■ Defendant argues on appeal that, even if the district court's dismissal were error, the State's appeal should be dismissed because double jeopardy would bar reprosecution of Defendant on the charge of aggravated assault on a peace officer with a deadly weapon. We disagree.

Defendant argues that *County of Los Alamos v. Tapia,* 109 N.M. 736, 790 P.2d 1017 (1990), should not control here, and she distinguishes *Tapia* from the instant appeal on several grounds. However, we perceive only two possibly significant differences. First, in *Tapia,* the defendant waited until jeopardy had attached before making his motion, while here Defendant made her motion before jeopardy attached on the aggravated assault charge, but asked the district court not to rule until the end of the State's case (by which time, of course, jeopardy had attached). Second, here the State arguably shares some of the responsibility for the district court's failure to rule on Defendant's motion until after jeopardy attached. As stated above, the State did not object to the district court's withholding its ruling until the close of the State's case.

Despite these differences, we are not persuaded that *Tapia* does not allow for reprosecution on remand. The essential facts remain that the charge against Defendant was dismissed at her behest, not the State's, and that the district court's dismissal on double-jeopardy grounds did not amount to an adjudication of Defendant's factual guilt or innocence. *See id.* at 739–44, 790 P.2d at 1020–25. We note that, despite the timing of Defendant's initial motion to dismiss, she sought in that motion to have her trial termi-

nated before the case reached the jury—at the close of the State's case. Defendant's failure to "pursue [her] valued right to have [her] trial completed by the first tribunal" fatally weakens her claim to protection of her double jeopardy interest. *Id.* at 744, 790 P.2d at 1025.

### III. *CONCLUSION*

In summary, even assuming without deciding that Section 30–22–1 (resisting, evading, or obstructing an officer) is a lesser included offense of Section 30–22–22(A)(1) (aggravated assault on a peace officer with a deadly weapon), the district court erred when it dismissed the aggravated assault charge at the close of the State's case. We hold that, under *Johnson,* single-prosecution double jeopardy had not been implicated at the time of the dismissal because Defendant had not been convicted of aggravated assault. The State should have had the opportunity to obtain a determination of Defendant's guilt or innocence. Also, we hold that double jeopardy does not bar Defendant's retrial on the charge of aggravated assault on a peace officer with a deadly weapon. *See Tapia,* 109 N.M. at 739–44, 790 P.2d at 1020–25.

We reverse and remand for retrial of Count I, aggravated assault on a peace officer with a deadly weapon. Nothing in this opinion should be interpreted as precluding the possibility that, if Defendant is convicted on remand, the district court may be required to revisit the multiple-punishment double-jeopardy issue. *See Johnson,* 467 U.S. at 499–500, 104 S.Ct. at 2540–2541. We wish to thank amici for their valuable assistance in briefing the preservation issue and participating at oral argument.

IT IS SO ORDERED.

HARTZ, J., concurs.

PICKARD, J., dissenting.

HARTZ, Judge (specially concurring).

I join in Judge Bivins' opinion. I write separately primarily to address the dissent.

The question whose answer divides this panel is: When should an appellate court ignore a clear outcome-determinative error

by the trial court? I have no hesitation in calling such an error "fundamental."

Although the dissent rejects the view that the error here was "fundamental," it does not appear to dispute the nature of the error. It states that the appellate issue "probably" satisfies two requirements of the test set forth in *United States v. Krynicki,* 689 F.2d 289 (1st Cir.1982): (1) "the new issue is purely legal and its resolution would not be aided by further fact development" and (2) "the proper resolution of the issue is not in doubt." In addition, one cannot doubt that the error was outcome-determinative. We are not remanding for a new hearing on whether the felony charge should be dismissed. We are not saying, for example, that the trial court failed to consider certain evidence or a particular legal principle and now needs to reconsider its decision. We are saying that the ruling was simply wrong.

As an appellate court whose duty is to correct legal error, our initial instinct should be to reverse when we see clear, outcome-determinative error. To justify failure to act, there must be some strong countervailing policy. Reversal in this case would violate no such policy. I will address the policy arguments raised in the dissent and in the appellate briefs.

The dissent states that addressing issues that were not first presented to the trial court "would erode the moral authority of the trial bench." This contention misconceives the role and authority of judges in a free society. The sole authority of the trial bench is to do what the law compels or permits. The trial bench has no "moral authority" to rule contrary to the law. The authority that the dissent would protect is the authority of men and women regardless of whether they act in excess of their rightful powers. Our concern instead should be the authority of the law. In the outdated language of John Adams in the Declaration of Rights of the Massachusetts Constitution, this nation strives to be a "government of laws and not of men." Mass. Const. pt. 1, art. XXX. Although we should always display respect and understanding for the trial court, the prestige of the trial court is not a proper consideration in deciding whether to reverse.

When we tell the public and the practicing bar, "Yes, the judge made an error, but we do not want to erode the judge's authority by reversing the judge's decision," we may enhance the authority of the judge, but we undermine confidence in the administration of justice. New Mexico has no need for the authority of the autocrat.

Perhaps the point being made by the dissent is that judges undoubtedly feel frustration at being reversed on grounds that were not presented to them and, as stated by amicus, "[i]t is simply unfair and disrespectful to reverse a trial judge who has properly decided the issues presented by the parties for 'error' that he or she did not commit." Yet, it is probably more disrespectful to reverse a judge when the issue has been squarely presented and well-argued at trial than when it has not been raised at all; in the former situation the appellate court is saying that the trial court erred without any excuse. Also noteworthy is the alacrity with which this Court *affirms* lower court rulings on grounds that were not raised below or that were even rejected by the trial court. *See, e.g., State v. Beachum,* 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972). When we affirm in this circumstance we are saying that the trial court committed two legal errors—adopting an incorrect ground and not adopting a correct one. Is it really more respectful to say that a judge stumbled onto the right result despite two errors than to say that the judge erred just once?

As for the "unfairness" to the judge in reversing a decision on a ground not presented to the judge, this is a matter of degree. Suppose that the following exchange had occurred during the fifty-minute hearing on Defendant's motion to dismiss:

Prosecutor: Anyway, Your Honor, this is all just one prosecution, so there is no double-jeopardy issue.

Judge: Do you have any authority for that proposition?

Prosecutor: No.

I am confident that this Court would find that the prosecutor's statement sufficed to preserve the ground on which we reverse. If a legal proposition is stated by counsel, pres-

ervation of the issue does not depend upon citation to authority. It is not uncommon for this Court to find that a ground for objecting to a ruling was preserved by a brief comment buried in a long discourse and unsupported by any reference to precedents, although our opinions generally do not discuss the matter of preservation in any detail. *See, e.g., State v. Rodriguez*, 114 N.M. 265, 837 P.2d 459 (Ct.App.1992) (defendant preserved ground in one sentence during lengthy hearing and without citation to any case law or any argument as to prejudice). In terms of "fairness" to the judge, I see little difference between the hypothetical and the present case.

A second concern expressed by the dissent is that recognition of the doctrine of fundamental error will, at least in appeals by the State, effectively eliminate the general requirement that issues be preserved in the trial court. That concern is misplaced. *Krynicki* was decided more than ten years ago. It is still good law in the First Circuit. Yet, apparently no subsequent reported federal case has applied the doctrine of fundamental error in favor of the government in a criminal appeal. The dissent notes that no state court has followed *Krynicki*. But neither has any rejected the opinion. The matter simply has not arisen. The leading case on the entire subject, *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), which allowed the Internal Revenue Service to prevail against a taxpayer on a ground raised for the first time on appeal, has been cited much more often than it has been followed.

There are two principal reasons why appellate courts would rarely reverse on grounds of fundamental error under the guidelines we adopt today. First, most appellate issues have a factual component. When there has been no reason to develop the pertinent facts at the trial-court level (because the issue to which the facts are relevant was not raised), the error cannot be clear. Also, when the law is clear to the appellate court, it is generally well known to trial counsel and has therefore been raised below. During my five years on this Court, several appeals have presented the occasion to apply the doctrine of fundamental or plain error in favor of the defendant, *see, e.g.,*

*State v. Bencomo*, 109 N.M. 724, 790 P.2d 521 (Ct.App.1990); *State v. Crislip*, 109 N.M. 351, 358, 785 P.2d 262, 269 (Ct.App.) (Hartz, J., specially concurring), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989), but I have never before encountered an appeal by the State in which the requirements set forth in Judge Bivins' opinion have been satisfied. Occasionally, one may be puzzled that the State did not raise a particular legal theory at trial, but failure to raise the theory almost invariably led to the failure of the State to develop the facts pertinent to a determination of the applicability of the theory to the case. In other circumstances, it may seem that a particular argument not made by the State would have been a good one, but it is not "clear" what the law is.

Perhaps the opinion in this case will cause a small surge in the number of appeals by the State in which the State argues fundamental error, but I suspect that the lack of success encountered by the State in making those arguments will lead within a short time to better use of the Attorney General's resources. Unlike defense counsel, the Attorney General has no ethical obligation to raise a ground on appeal when he thinks that the ground is unlikely to prevail and that raising the ground may only harm his credibility with the appellate court.

Even if the Attorney General decides to be aggressive in pursuing the issue, I do not see acceptance of the doctrine of fundamental error in appeals by the State as increasing to any material extent the burden on the appellate courts. The dissent says that by recognizing the doctrine of fundamental error we *magnify our workload* because we must always decide two issues: (1) whether to address the merits, and (2) the merits. The magnification, however, is minimal. The merits should not require much work because Judge Bivins' opinion restricts application of the fundamental error doctrine in appeals by the State to only cases of "clear" error. If the appellate court has difficulty with the issue, that in itself is ordinarily reason enough not to address the issue when it was not raised below. As for the question whether to address the merits, the difficulty should be no greater—and probably much

less—than the difficulty in deciding whether to *affirm* for a reason not raised below.

Nor am I persuaded that criminal defendants are denied any protected right by permitting the State to argue fundamental error on appeal. The State's right to appeal in criminal cases was extremely limited until Article VI, Section 2 of the New Mexico Constitution was amended in 1965 to add "an aggrieved party shall have an absolute right to one appeal." *See State v. Santillanes*, 96 N.M. 482, 484–86, 632 P.2d 359, 361–64 (Ct. App.1980), *rev'd on other grounds*, 96 N.M. 477, 632 P.2d 354 (1981); *cf. Ex parte Carrillo*, 22 N.M. 149, 158 P. 800 (1916). In construing the amendment, we have written, "The State is without question a party to every criminal proceeding in the district courts; a claim of disposition contrary to law is a valid and legal grievance which indisputably makes the State 'an aggrieved party.'" *Santillanes*, 96 N.M. at 486, 632 P.2d at 364. The Constitutional policy permitting appeals by the State in criminal cases has been buttressed by legislative policy. *See* NMSA 1978, § 39–3–3(B) (Repl.Pamp.1991). Given this public policy expressed by Constitution and statute, I see no protectable interest of a criminal defendant in benefitting from an error that can be corrected on appeal, subject of course to the Constitutional prohibition against the government's appeal of certain matters, such as acquittals. As stated by Judge Wood in his separate opinion in *Santillanes*, "The public, as well as defendant, is entitled to fair play." 96 N.M. at 489, 632 P.2d at 367. I fail to understand the dissent's apparent position that the public interest in the prosecution of crime is the only interest not worthy of protection by application of the fundamental-error doctrine. I question whether there is a lesser public interest in the prosecution of crime than in the collection of taxes. *See Hormel* (applying fundamental error to permit IRS to collect taxes on theory not raised at trial). Moreover, it is not a proper role for a court to decide, as suggested by the dissent, that there is no fundamental error because prosecution of a felony in some particular circumstance is not important.

Along the same lines, I reject the contention by amicus that application of the doctrine of fundamental error in favor of the State places the court in the position of an advocate. Applying the law—particularly "clear" law—is a duty of the court as an arbiter, not as an advocate. A trial court can properly rule in favor of the State on evidentiary and other matters on grounds not raised by the prosecutor. As I have already noted, appellate courts regularly affirm convictions on grounds not raised by the State. The appellate court's duty to apply the law impartially does not require the court to close its eyes to legal error.

There is, however, one policy argument of substantial weight. Appellate procedures should encourage thorough preparation at the trial level. To be sure, the influence of appellate procedure on trial preparation should not be exaggerated. I doubt that adoption of the fundamental-error doctrine in favor of the State will encourage sloppiness and negligence. Prosecutors are unlikely to think that they can ignore their legal homework on the belief that any resulting loss can be corrected on appeal. Prosecutors generally have only one opportunity to obtain a conviction. Nor is there likely to be any tactical advantage to the State in failing to raise a sound argument at the trial level. Defendant has made no suggestion of sandbagging by the prosecutor in this case. Nonetheless, rejection of the doctrine of fundamental error could encourage additional training and preparation by prosecutors. For that reason alone, one might be reluctant to consider a claim of fundamental error when a properly trained and prepared prosecutor should be expected to raise the issue in the lower court. That is not the situation here.

Defendant's claim of double jeopardy was raised a few minutes before trial was scheduled to start, immediately after the trial court accepted Defendant's pleas to the misdemeanor charges. Defense counsel requested that the matter be taken under advisement until the State presented its case. The court promptly agreed. The hearing on the motion was conducted that afternoon after the State rested its case. The time avail-

able for the prosecutor to research the issue was rather short, particularly in light of the demands of the trial itself. This state's district court libraries are not the most complete. Although at oral argument amicus contended that any competent prosecutor would have known to raise *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), in response to Defendant's double-jeopardy argument, I disagree. The proposition stated in *Johnson* that controls this case does not arise frequently in published decisions and is not generally known; the proposition has not been cited in any published decision in New Mexico. It is not that surprising that the prosecutor did not discover *Johnson*. Moreover, defense counsel, who brought the double-jeopardy motion, had a better opportunity than the prosecutor to find the opinion. I assume that defense counsel did not in fact find *Johnson*, because if he did, his failure to alert the trial court to the opinion would have been a breach of his ethical responsibility to cite controlling contrary authority. *See* SCRA 1986, 16–303(A)(3) (Repl.Pamp.1991) (applicable rule of professional conduct).

In short, I do not believe that one can assume that in the circumstances presented here a properly trained and prepared prosecutor would have found *Johnson* or even thought of the legal proposition decided in *Johnson*. The policy of encouraging training and preparation of prosecutors does not support rejection of the application of fundamental-error doctrine to this appeal.

On the contrary, if one's underlying concern is to encourage thorough preparation of matters in the trial court, this Court advances that end by considering the issue here. I cannot fault the trial court for failing to apply *Johnson*, but the manner in which the trial court considered Defendant's motion was an invitation to sloppy practice and even sharp tactics. Motions of this type should be given full consideration free of the pressures of a trial, when much attention is necessarily focused elsewhere. SCRA 1986, 5–601(D) (Repl.1992), which governs criminal procedure in district court, provides: "All motions, unless otherwise provided by these rules or unless otherwise ordered by the court, shall

be made at the arraignment or within 20 days thereafter, unless upon good cause shown the court waives the time requirement." Although acknowledging the need for exceptions from inflexible timeliness requirements, the rule clearly recognizes the advantages of a motion practice divorced from trial proceedings.

The best procedure in this case would have been for Defendant to plead guilty to the misdemeanors far enough in advance of the trial that a hearing on a motion to dismiss the remaining felony count could have been conducted well before any jury was empaneled. The timing of the plea here was not at all the responsibility of the State. Even if, contrary to *Johnson*, the trial court determined that the motion could not be decided prior to presentation of the State's evidence, the hearing on the motion still should not have been conducted during trial. When a defendant raises a dispositive motion or a motion to suppress on the eve of trial or during trial, the trial court should ordinarily reserve ruling on the motion until after the jury renders a verdict. Then the matter can be given more focused attention by counsel and the court. My impression is that attorneys and judges are not familiar with the advantages of conducting post-verdict hearings on untimely motions. Judges are understandably reluctant to deny as untimely a defendant's motion that may have merit. But the choice need not be between (1) outright rejection of a potentially meritorious motion and (2) interrupting trial to consider the motion. When a motion is raised at the last moment, it is appropriate to require the defendant to await a verdict before the court resolves the motion. If the verdict is an acquittal, the motion is moot. If the verdict is a conviction, the State generally can appeal an adverse ruling on the motion without violating the defendant's rights under the double-jeopardy clause. *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Morrison*, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976).

To reject application of the doctrine of fundamental error in the situation presented by this case is to encourage defense counsel

to raise motions of this sort on the eve of trial and to countenance the practice by trial courts of hearing these motions and deciding them during the course of trial.[1] Such procedures encourage sloppy, even reprehensible, practices. In sum, the only ground that could justify refusing to apply the doctrine of fundamental error—that ground being encouragement of proper preparation and presentation of issues at the trial level—actually argues for reversal in this case.

PICKARD, Judge (dissenting).

I respectfully dissent from the majority's holding that the trial court's dismissal of the State's case against Defendant constituted fundamental error. First, I do not believe that it is consistent with the function and scope of appellate review to expand the doctrine of fundamental error to apply to the State's interest in prosecuting a particular criminal charge. Second, even if it were appropriate to apply the fundamental error exception to the State, the facts of this particular case do not constitute fundamental error. Overlooking my disagreement with the majority on the fundamental error issue, I fully concur in the remainder of the opinion.

I agree with the majority that the State failed to preserve the *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), issue. However, I disagree with the majority as to the significance of the lack of preservation in light of the corrective purpose that intermediate appellate review serves. *See* J. Dickson Phillips, Jr., *The Appellate Review Function: Scope of Review,* 47 Law & Contemp.Probs., Spring 1984, at 1, 2–3. I believe that the primary role of the intermediate appellate court is quite simply to correct the errors made by the trial court. *See* Daniel J. Meador, *Appellate Courts* 2–3 (1974). It is not our role to arrive at our own conception of what would be a just result in a particular case by deciding issues not raised at trial level. Accordingly, we should continue to limit the scope of appellate review to correcting trial court acts or omissions by addressing arguments that the parties properly presented to the trial court and that thereby properly alerted the trial court to the matter at hand and afforded the trial court the opportunity to correct. *See* Phillips, *supra,* at 2–3; *see also State v. Lopez,* 84 N.M. 805, 809, 508 P.2d 1292, 1296 (1973); *Madrid v. Roybal,* 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991).

Limiting the scope of appellate review to issues that have been presented to the trial court safeguards the fairness and integrity of the adversarial process by protecting an adversary's opportunity to contest the issue at the trial level as well as to develop the record for review. *See* Phillips, *supra,* at 4–5. Adhering to the preservation requirement also discourages sloppy legal practices. *See id.;* Paul T. Wangerin, *"Plain Error" and "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default,* 29 DePaul L.Rev. 753, 760 (1980). In addition, the rules of preservation further the interests of judicial economy for the simple reason that each issue raised for the first time on appeal actually presents the appellate court with two issues: whether to address the issue and, if so, the decision on the merits. Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule,* 40 Vand.L.Rev. 1023, 1032 (1987). Furthermore, a lax adherence to the rules of preservation by broadly extending the fundamental error doctrine to the State could very well inundate the Court of Appeals with countless new appeals, all containing issues not previously considered by the trial court. *See* Wangerin, *supra,* at 760. Finally, we must consider the negative impact on the trial court if we address issues that were not first presented to the trial court. To do so would erode the moral authority of the trial bench, both with the public and the practicing bar, by our undermining the role of the trial court and compromising the division of the functions between the

---

1. In the future it might be appropriate to refuse to apply fundamental error in a situation like the present case unless the prosecutor had sought more preparation time by requesting a post-verdict hearing and the judge had rejected the request. An adequate reason not to adopt that position here is that the possibility of conducting a post-verdict hearing on a pre-verdict motion is not sufficiently well known that one could expect the prosecutor to have urged the procedure.

trial and appellate courts. Phillips, *supra*, at 5.

Although proper presentation to the trial court is the general rule to which we adhere in delineating the scope of appellate review, it is well-established law in New Mexico that we have the discretion to review questions involving fundamental error or fundamental rights. SCRA 1986, 12–216(B)(2) (Repl. 1992). It is equally well established that in the context of fundamental error, this Court will exercise its discretion very guardedly and only if a fundamental right has been invaded, rather than merely in aid of a claim that is strictly legal, technical, or unsubstantiated. *See State v. Garcia,* 19 N.M. 414, 421–22, 143 P. 1012, 1014–15 (1914); *State v. Chacon,* 80 N.M. 799, 800, 461 P.2d 932, 933 (Ct.App.1969).

With few exceptions, *see New Mexico Dep't of Human Servs., Income Support Div. v. Tapia,* 97 N.M. 632, 634, 642 P.2d 1091, 1093 (1982); *Schaefer v. Whitson,* 32 N.M. 481, 482–84, 259 P. 618, 618–19 (1927), fundamental error historically has been limited to criminal defendants. The majority's application of the doctrine of fundamental error to the State is a minority position in the United States. In fact, it does not appear to be a position taken by any other state jurisdiction. The majority cites to no other state that has extended fundamental error to the prosecution and instead relies on the reasoning in *United States v. Krynicki,* 689 F.2d 289 (1st Cir.1982), a federal case.

In support of its application of fundamental error to the State, the majority relies in part on the "miscarriage of justice" definitional prong of fundamental error in prior New Mexico case law. *See State v. Rodriguez,* 113 N.M. 767, 774, 833 P.2d 244, 251 (Ct.App.), *cert. denied,* 113 N.M. 636, 830 P.2d 553 (1992). To further support this argument, the majority relies on what it perceives to be the party-neutral definition of fundamental error found in *State v. Lucero,* 70 N.M. 268, 272, 372 P.2d 837, 840 (1962), *State v. Bencomo,* 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct.App.1990), and *Garcia,* 19 N.M. at 421–22, 143 P. at 1015. However, a close reading of those cases does not persuade me that the definition of fundamental

error should include the State. A precise reading of *Lucero* reveals that fundamental error applies specifically to the defendant's rights: "[T]he errors complained of must be such as go to the foundation of the case, and which deprive the defendant of rights essential to his defense." *Lucero,* 70 N.M. at 272, 372 P.2d at 840. Similarly, by quoting this exact language from *Lucero,* this Court in *Bencomo* reaffirmed that the rights involved were those of the defendant. *Bencomo,* 109 N.M. at 725, 790 P.2d at 522. In first articulating the doctrine of fundamental error, the New Mexico Supreme Court in *Garcia* voiced its concerns about the lack of "substantial justice" precisely because the criminal defendant had been imprisoned when there was "not only no evidence ... to support the verdict, but the evidence established, conclusively, that he was innocent." 19 N.M. at 421, 143 P. at 1014.

Moreover, by utilizing a miscarriage-of-justice standard in favor of the State, I fear that the majority rationale will, in all State's appeals, essentially allow the fundamental error exception to swallow the general rule, because the State is allowed to appeal only in limited circumstances. *See* NMSA 1978, § 39–3–3(B) (Repl.Pamp.1991) (State appeals are allowed only for dismissals or when evidence is suppressed); *State v. Santillanes,* 96 N.M. 482, 485, 632 P.2d 359, 362 (Ct.App. 1980) (State may also appeal disposition contrary to law), *rev'd on other grounds,* 96 N.M. 477, 632 P.2d 354 (1981).

Finally, I disagree with the majority that there is not good reason to treat the State differently from defendants. I believe that *State v. Baca,* 92 N.M. 743, 745, 594 P.2d 1199, 1201 (Ct.App.1979), states good law. There are many rules that apply only to defendants, most notably the constitutional rights set forth in the Bill of Rights and the Due Process Clause of the Fourteenth Amendment, which expressly states, "nor shall any *State* deprive any *person* of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added). Our Supreme Court has only recently noted that part of the purpose of the double jeopardy clause is to prevent the State "with all its resources and power" from

**664**

harassing individuals. *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Therefore, I would not expand the rule of fundamental error in favor of the State.

Even if under New Mexico definitions of fundamental error, it is appropriate to extend the doctrine to the State, I am not persuaded that fundamental error exists in this particular instance under either the *Krynicki* analysis or the *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), analysis relied on by the majority. First, I disagree with the majority's application of the *Krynicki* factors to the case at hand. *See Krynicki,* 689 F.2d at 291–92. I agree that factors one (that the new issue is purely legal and its resolution would not be aided by further fact development) and two (that the proper resolution of the issue is not in doubt) are probably both satisfied, since *Johnson* appears to be dispositive. *But see* Phillips, *supra,* at 4–5 (indicating that among the values protected by adherence to the preservation rule is the adversary process, including a full opportunity for development of the issues; accordingly, it may be presumptuous for an appellate court to assume that the adversaries would have done nothing different had the issue been raised below).

However, I do not find the third *Krynicki* factor (that the issue is almost certain to arise in other cases and therefore it is judicially economical to address it at the appellate level) to be persuasive. Since *Johnson* is clearly established law, I do not understand why this Court feels compelled to address the underlying double jeopardy issue on the basis that the issue will most surely arise in other cases. *See* Martineau, *supra,* at 1040–41. My most strenuous disagreement with the majority's application of the *Krynicki* factors, however, deals with the fourth and most important factor (that declining to reach the issue would result in a miscarriage of justice).

As relied on by the majority, the United States Supreme Court in *Hormel* acknowledged the existence of "exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Hormel,* 312 U.S. at 557, 61 S.Ct. at 721. The *Hormel* Court further acknowledged that a "rigid and undeviating" adherence to the rules of preservation could result in the sacrifice of fundamental justice. *Id.*

In the instant case, however, I am not persuaded that this Court is presented with such an exceptional case of injustice. It is not clear to me that the State's interest in prosecuting a suspected criminal has been so thwarted as to rise to the level of fundamental error when the State cannot prosecute Defendant for the assault charge because the State failed to preserve the *Johnson* issue, but when Defendant did plead no contest to six misdemeanors arising from the transaction upon which the assault charge was based. Defendant has not evaded the prosecutorial reach entirely and can be sentenced to substantial punishment. Thus, under the facts of this case, the prosecutor's interest in prosecuting suspected criminals is not especially compelling.

For these reasons, I would decline to extend the doctrine of fundamental error to the State and would, therefore, affirm the trial court. Because the majority rules otherwise, I respectfully dissent.